FOUR CORNERS BUILDING AND LOAN ASSOCIATION, complainant-respondent,

*v.*

FRANK SCHWARZWAELDER, defendant-appellant.

[Decided March 4th, 1918.]

1. A building and loan association loaned money on a mortgage of a city lot; its solicitor certified that the mortgage was a first and valid lien; in fact, there was a prior mortgage held by an estate of which the defendant, one of the directors of the association, was an executor; the property was described by reference to the street lines as the only monument and by a number on a land company map; the name of the mortgagor in the mortgage held by the estate was different from the name of the mortgagor in the association's mortgage; the defendant had nothing to do with making the loan; he had no actual knowledge that the property covered by the two mortgages was identical; he held as executor many mortgages and in the course of his business examined many properties; he knew his mortgages by street numbers and not by numbers on a land company map; the association's mortgage was accompanied by a regular abstract of title in which defendant's mortgage was not mentioned, and attached to which was a certificate by the association's solicitor, then a lawyer in good standing, that the association's mortgage was a first and valid lien.—*Held*, that the defendant could not be found guilty of negligence for failing to apprise the association of the existence of the prior mortgage; that the directors had the right to pursue the usual business custom and trust the solicitor to close the loan and record the mortgage, and that as the loss did not come until the solicitor turned

aside the money from its proper destination—the satisfaction of the first mortgage—the association had already suffered the loss without the defendant having had any opportunity to prevent it, and he cannot be held for negligence.

2. A building and loan association loaned money on a mortgage of a city lot; its solicitor certified that the mortgage was a first and valid lien; in fact, there was a prior mortgage held by an estate of which the defendant, one of the directors of the association, was an executor. The defendant had examined and valued the property for the purpose of a loan on the application of one Wagner and had reported to the association; the estate's mortgage was given by Daly; the title was at the time of Wagner's application in Crocker, the solicitor of the association; the minutes of a subsequent meeting of the directors at which defendant was not present, recite that Wagner had sold the property (which was untrue) ; that all the committee, including the defendant, reported in favor of a loan to Sims (which was untrue as far as defendant is concerned). The defendant never actually had to do with the loan to Sims; his knowledge is claimed to have come from hearing the minutes with these false recitals read over at a later meeting; this fact was not sufficiently proved, but if the defendant knew all the facts, he knew the loan was large enough to enable Sims to satisfy the prior mortgage to the estate, and up to the time the check of the association for the loan was cashed, might anticipate that the estate mortgage would be paid before the solicitor closed the loan with Sims; the defendant had no reason to anticipate that the solicitor would forge a discharge of the estate mortgage; when the check had been cashed and the money turned aside from the satisfaction of the prior mortgage, the loss was already incurred.—*Held*, the proximate cause of the loss was the rascality of the complainant's own solicitor, and the defendant cannot be held for negligence.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lane, whose opinion is reported in *88 N. J. Eq. 212.*

*Mr. Andrew Van Blarcom,* for the complainant-respondent.

*Mr. Thomas S. Henry* and *Mr. Francis Child,* for the defendant-appellant.

The opinion of the court was delivered by

SWAYZE, J.

The complainant seeks to recover of the defendant the loss on two mortgages in which it had invested. This loss was caused

by Crocker, the complainant's solicitor, falsely certifying that the mortgages were first liens, when, in fact, there were prior mortgages which he had procured to be canceled of record by false discharges.

The case differs from cases brought by receivers in the interest of creditors or stockholders of which *Williams* v. *McKay, 40 N. J. Eq. 189; 46 N. J. Eq. 25,* is the leading instance. It differs also from cases brought by stockholders suing in their own right (*Gerhard* v. *Welsh, 80 N. J. Eq. 203*), and from cases where there was habitual neglect of duty, and the loss might have been prevented by proper attention; and from cases where the loan on its face was illegal or forbidden by the by-laws. The present case is more like *Citizens Building Association* v. *Coriell, 34 N. J. Eq. 383.* There the defendant was held liable for losses on loans made on personal security, which on their face were in violation of a by-law, but not liable for loss due to a defective acknowledgment of a mortgage because, as the chancellor held, the directors properly relied on the knowledge and attention of the solicitor for the legality of the mortgages. In the present case, the proximate cause of the loss was the fraud of the solicitor; the complainant is seeking to hold the defendant for the fraud of its own agent, who either paid the money to the mortgagors improperly and without seeing to it that prior liens were lawfully discharged, or more probably embezzled that money himself. To sustain the complainant's claim, reliance is had upon the fact that the defendant as one of the executors of an estate held a prior mortgage on each property. The real question therefore is whether the defendant was under any duty to the complainant to give actual notice of the existence of the mortgages held by the estate. Mortgages on two properties are involved, one of which may be called the Aschenbach East Orange mortgage, and the other the Sims-South Orange mortgage.

The Aschenbach mortgage was on a city lot on North 18th street, East Orange, described by metes and bounds referring to the street lines as the only monument; the number of the section and lot on a land company's map is also stated. There are no other identifying marks. The prior mortgage held by the estate of which defendant was an executor was given by William H.

Daly. It is not shown·that the defendant had anything to do with making the Aschenbach loan; the appraisement was made by a committee of which the defendant was not a member. It is not claimed that he had any actual knowledge of what property was covered by the Aschenbach mortgage, but it is sought to hold him on the theory that he was negligent in failing to discover that a mortgage given by Aschenbach was on the same property on which the estate held a prior mortgage given by Daly. As there was no similarity in the names of the two mortgagors, he can only be held in case we are prepared to say that he ought to have examined the description in the Aschenbach mortgage and recalled that it was the same description as in the Daly mortgage.

Cases might arise where a director of a building and loan association should be held even to so stringent a liability. It would depend on the circumstances of each case. Here the defendant as executor held many mortgages; in the course of his business he examined many properties; the description in the Aschenbach mortgage contained nothing to excite attention; it must have differed little from the description of adjoining lots; the defendant knew his mortgages by street numbers and not by numbers on a land company map. The name of the mortgagor was different. Above all that, the Aschenbach mortgage was accompanied by a regular abstract of title in which the Daly mortgage was not mentioned, and a certificate by the complainant's solicitor, then a lawyer in good standing, that the Aschenbach mortgage was a first and valid lien. We think that the most that could be required of defendant by way of care upon an examination of the affairs of the association, would be to ascertain that the usual papers, bond, mortgage, insurance policy and abstract were in hand, and that the solicitor had certified as he had. In most cases this would be more satisfactory even than an actual reading of the mortgage.

But even if the defendant could be found guilty of negligence in this respect, there would still remain an insuperable difficulty in the complainant's way. It is not claimed that the defendant should have been present when the mortgage was executed and the money paid. As business is done, that would be obviously im-

practicable.    The directors had the right to pursue the usual business custom and trust the solicitor to close the loan and record the mortgage; in fact, such were the solicitor's duties under the by-laws.  He alone could properly attend to paying off prior encumbrances and making sure that complainant's mortgage was a first lien.  The loss did not come until the solicitor turned aside the money from its proper destination, the satisfaction of the first mortgage, and either wrongfully paid it to Aschenbach or embezzled it himself.

When the money was thus turned aside, the association had already suffered the loss without the defendant having had any opportunity to prevent it.  He might, indeed, have subsequently made an examination and discovered that the mortgage was not a first lien, but there is nothing in the case to show that this discovery could have made it possible for the complainant to prevent the loss.  The solicitor could hardly have been solvent; his dishonesty speaks loud to the contrary; at any rate, in the absence of evidence, we cannot find that he was solvent.

As to Aschenbach, no suggestion is made that recovery could ever have been had of him.  If it could, complainant ought not to seek it of defendant.  The result is that if we could find negligence on the part of the defendant, it necessarily came too late to be the cause of complainant's loss, and the decree below was wrong.  This is not a punitive proceeding, but an attempt to recover actual damages caused by defendant's negligence.

The facts as to the Sims-South Orange property are somewhat more complicated.  The property belonged, in 1909, to Roland D. Crocker, who was the solicitor of the complainant.  He conveyed to Mabel Daly, by deed dated October 1st, acknowledged October 11th and recorded October 19th, 1909.  Mabel Daly and her husband, William H. Daly, mortgaged to the defendant and his coexecutor October 11th, 1909, by a mortgage dated and acknowledged on that day and recorded October 21st, 1909.  The property was then reconveyed by the Dalys to Crocker by a deed dated October 11th, acknowledged November 19th, and recorded November 20th, 1909, and the title remained in Crocker until as late as April 1st, 1913, when he conveyed it to Sims.  On October 10th, 1912, Louis Wagner applied to the complainant for a

loan on this property, which then belonged to Crocker, subject to the defendant's mortgage. The defendant and two others were appointed a committee to appraise the property. The defendant alone did so. Thereupon the directors ordered that the committee be continued, and report to the officers who were given power to grant the loan if a satisfactory report was made; and later, the officers were empowered to grant such amount as should be unanimously recommended by the committee. The defendant never formally joined with his fellow-committeemen in recommending a loan. Wagner never owned the property; and proceedings for a loan to him were dropped. It seems probable that both Wagner and Sims were merely tools of Crocker. On April 25th, 1913, the complainant's minutes recite that Wagner had sold the property to Sims (which was untrue), that all of the committee (including the defendant) reported in favor of a loan to Sims (which was untrue, as far as the defendant is concerned); it was then ordered that the committee's recommendation be received and granted. The defendant was not present at this meeting. He never actually had to do with the loan to Sims. The effort is to bind him by the acts of the others because at a later meeting on May 23d, at which he is said to have been present, the minutes of the meeting of April 25th are said to have been approved. The fact is doubtful, since the approval of May 23d seems on its face to relate to a special meeting of April 30th, and not to the regular meeting of April 25th. The secretary, however, testifies that the approval of May 23d covers both the meetings April 25th and April 30th. The defendant denies that he ever heard the resolution of April 25th read. The point is of some importance, since it is all there is to show that the defendant knew anything about a Sims loan. In view of the defendant's denial, and the secretary's admission of the careless way in which the minutes were kept, we think the complainant has failed to sustain the burden of proof. This question, however, loses much of its importance in the view we take of the case. If we assume that the defendant knew that the Sims loan was to be on the same property as the abandoned Wagner loan, and that he ought to have recalled that the estate held a mortgage given by Daly on the same property, that would not charge him with

knowledge that the Sims mortgage would be a second mortgage. The amount proposed to be loaned was $1,500 more than the mortgage held by him and his coexecutor. He had the right to assume that his mortgage would be paid out of the money loaned by the association on the new mortgage. He must assume that, if he believed that Crocker, the solicitor, was an honest man; the complainant itself so held Crocker out by making him its solicitor. If we assume that the defendant knew all the facts that the most careful investigation would have disclosed, he knew that, although the loan had been authorized in April, the check had not been cashed until July 10th. Up to that time he certainly might anticipate that his mortgage would be paid, and it would serve no useful purpose and would no doubt be regarded by his fellow-directors as a foolish intrusion, for him to inform them of the existence of a mortgage of which the law charged them with constructive notice. Their very proper answer to him would be, "our solicitor will find the existing liens when he examines the title and attend to their satisfaction."

The prior lien would have been satisfied in the ordinary course; but the complainant's solicitor, instead of taking the ordinary course, undertook to satisfy the record by a forged discharge. The defendant had no reason to anticipate the solicitor's crime. Until the check had actually been cashed, and sufficient time had elapsed for Crocker to pay off defendant's mortgage without his in fact doing so, the defendant might properly trust that the complainant's own solicitor would protect his client's interests. A delay of three months is not unusual when prior liens have to be satisfied. When the check was cashed and the money misappropriated, the loss was already incurred, as in the case of the Aschenbach mortgage. Nothing that the defendant could do would save the complainant from the loss. If there had been proof that by prompt action the money could have been saved, the case would be different; the failure to take prompt action might, be negligence of the defendant intervening between Crocker's act and the final loss to complainant. In that event, the failure to act promptly might well be the proximate cause; but in the absence of such evidence, the proximate cause is the rascality of the complainant's own solicitor.

The decree must be reversed and the record remitted in order that there may be a decree dismissing the bill. The defendant is entitled to costs in both courts.

*For affirmance*—None.

*For reversal*—GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.