THE ATLANTIC CITY RAILROAD COMPANY, PLAINTIFF IN ERROR, v. ELIZABETH GOODIN, ADMINISTRATRIX, &c., OF JOHN H. GOODIN, DECEASED, DEFENDANT IN ERROR.

Argued June 27, 1898—Decided November 14, 1898.

1. A duty to look and listen for trains before stepping upon a railroad track lying between the station and a train discharging and receiving passengers at a regular stopping-place, is not necessarily chargeable as a matter of law upon a passenger alighting from such train and proceeding at once toward the station.

2. Under the particular circumstances of this case the question of negligence in such a passenger was properly submitted to the jury.

3. In this state a valid marriage can be contracted *per verba de præsenti*, without a ceremony and without a witness.

4. *Quære.* As to non-residents since the act of 1897. *Pamph. L., p.* 378.

On error to the Supreme Court.

For the plaintiff in error, *J. Willard Morgan* and *Charles V. D. Joline.*

For the defendant in error, *George J. Bergen.*

The opinion of the court was delivered by

COLLINS, J. The writ of error in this cause removes a judgment for damages recovered on verdict under the Death act. The chief complaint is that the trial judge refused to decide, as matter of law, that the decedent was guilty of negligence contributing to his death, but submitted the question of such negligence to the jury as one of fact. The defendant operates a double-track railroad between Camden and Atlantic City. At Lawnside, one of its regular stopping-places for accommodation trains, the station adjoins the westbound track. Outside the eastbound track there is an uncovered platform, level with the track, where the conductor and trainmen stand to assist passengers, but up to the time of the occurrence in controversy passengers on eastbound trains had been permitted, without objection, to alight, if they wished,

on the side of the train toward the station, and it was customary for those living on that side of the town or those who wished to go to the station to alight upon that side. Each rail of each track was planked, on both sides, the whole length of the platform and the intervening spaces were filled in with cinders to the level of the tops of the rails. There was no special place of crossing provided. The company had published to its employes the following rule: "Any train approaching a station when a passenger train is receiving or discharging passengers must be stopped before reaching the station and must not proceed until the passenger train moves away or a signal is given to go on, except when safeguards are provided." There were no safeguards at Lawnside and no gates on the car platforms. On July 21st, 1896, John H. Goodin was a passenger on an eastbound accommodation train scheduled to stop at Lawnside, where he lived. It did stop there. The car in which Goodin rode was carried beyond the platform and on that side stood opposite a ditch and embankment beyond. Goodin alighted on the side toward the station and was struck and instantly killed by a westbound express train. There was nothing to prevent his seeing the train had he looked before stepping on the track. It is contended that he was indisputably negligent.

There are adjudged cases that hold that when a railroad company provides a convenient place at which to alight from a train and invites egress only there, a passenger takes the risk of alighting elsewhere. Those cases are pressed upon our consideration. Whether sound or not, they do not touch the point of the present inquiry, viz., what is the duty of passengers where, after they have alighted, there is necessity to cross a track in order to reach the company's station ? We are asked to apply the same rule of duty to look and listen that is rigidly enforced upon the traveler on a highway. There is a plain difference between the case of such a traveler about to cross a railroad and the case of a passenger entitled to safe conduct to or from the company's station. In this state and in most other jurisdictions this difference is recognized by the courts.

Vice Chancellor Van Fleet, in *Klein* v. *Jewett*, 11 *C. E. Gr.* 474, 479, points out that the rule of duty at a public crossing has no application to a case where, by the arrangement of the company, it is made necessary for passengers to cross a track in order to reach the station or the cars. He says: "They [the railroad company] are bound to provide a way by which passengers may pass in safety. If the way provided crosses a track, no train should be permitted to pass over it at the point where passengers are required to cross it while a train is receiving or discharging passengers." On affirmance by this court (*Jewett* v. *Klein*, 12 *C. E. Gr.* 550), Mr. Justice Dalrimple said that a passenger crossing a track which intervened between a station and a train standing at the station to receive passengers, was not bound to look to see whether another train was approaching. That decision would seem to be controlling in this case. A distinction is urged because it related to a crossing from station to train— not from train to station. This is a distinction without a difference. It is the passenger's right to go to the company's station, and a safe way for the purpose must be provided. In the later case in this court of *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein*, 23 *Vroom* 169, 175, Mr. Justice Depue well states the true rule thus: "The duty of a railroad company as a carrier of passengers does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means for access to and from its station for the use of passengers, and passengers have a right to assume that the means of access are reasonably safe."

The great current of authority elsewhere is to the effect that failure to look for trains when crossing a track in passing from train to station is not necessarily negligent. The question is always one for the jury. The New York cases are most numerous, many of them being in the court of last resort. A full citation will be found in *Van Ostram* v. *New York Central and Hudson River Railroad Co.*, 35 *Hun* 590. The following decisions in other jurisdictions are clear and explicit on the subject: *Railroad Co.* v. *Johnson*,

59 *Ark.* 122 ; *Denver, &c., Railroad Co.* v. *Hodgson,* 18 *Col.* 117 ; *Philadelphia, Wilmington and Baltimore Railroad Co.* v. *Anderson,* 72 *Md.* 519 ; *Boss* v. *Providence and Worcester Railroad Co.,* 15 *R. I.* 149 ; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Lowell,* 151 *U. S.* 209 ; *Robostelli* v. *New York, New Haven and Hartford Railroad Co.,* 33 *Fed. Rep.* 796.

In the case last cited the doctrine was even applied where the crossing was not to a station building but to a mere gate of exit customarily used to reach the town, the stopping-place being at a junction and the single platform being on the opposite side. Some of the earlier Pennsylvania decisions were not very discriminating and may seem to uphold the defendant's contention, but the later cases are in substantial accord with the general trend of judicial opinion. *Pennsylvania Railroad Co.* v. *White,* 88 *Pa. St.* 327 ; *Flanagan* v. *Philadelphia, Wilmington and Baltimore Railroad Co.,* 181 *Id.* 237. The only decision to which we have been referred directly supporting the proposition that it is necessarily negligent for a passenger to cross from train to station without looking for a possible train on an intervening track is *Connolly* v. *New York and New England Railroad Co.,* 158 *Mass.* 8. That decision treats the question inadequately without noticing the right of passengers to assume that their safety will not be imperiled by the carrier. The precedents cited are all highway cases. Massachusetts seems to stand alone on this subject.

That in the case in hand the passengers were only invited to alight upon a platform on the side away from the tracks is not a controlling circumstance, but simply a fact for the jury ; such was the fact in all the cases cited. The passengers were not forbidden to alight on the other side, but, on the contrary, had always been permitted to do so. Wherever they should alight they would have to cross the tracks to reach the station, where they had a right to go, and there could be no appreciable difference whether they should alight on the platform and then walk around the train and cross or wait until the train should move on before crossing, or, as

Goodin did, alight on the side towards the station and cross at once.

In *Chicago, &c., Railroad Co.* v. *Lowell, supra,* there was a notice posted in the cars that passengers leaving a car by the front should pass to the right, and by the rear to the left (to a platform), in order to avoid trains on the other track. A passenger failed to observe this rule in alighting from a car, and in attempting to cross an intervening track to the opposite side of a double station was struck and injured by a passing train. In delivering the opinion of the Supreme Court of the United States Mr. Justice Brown remarked: " Had the plaintiff complied with the notice and alighted upon the platform he would still have been obliged to cross the track with the same possibility of being struck by a passing train that confronted him in this instance." And in *Robostelli* v. *New York, New Haven and Hartford Railroad Co., supra,* Judge Wheeler thus elaborates the same argument: " Passengers from West New Rochelle stopping at this station could not reach there from the train on the track which this train was on without crossing the other track. They could get off on to the platform and go past the end of the train and cross, or get directly down on the other side and cross. If they should get off on the platform and wait for the train to leave they would still have to cross, and there was no shelter there or other conveniences for waiting. The train could not pass on the other track without the liability of encountering these passengers, and if it passed while the train was standing and the passengers alighting it would be quite likely to encounter them when attempting to cross by the rear of the other train."

It is noteworthy that in the case in hand the company's rule only forbade the passing of trains until the train at the station should move on. Strictly construed that rule made it more dangerous to wait for the train to move on than to cross at once. In the Massachusetts case it was conceded that the passenger had the right to alight on the side of the train toward the station, although there was provided on the other side a platform for that purpose. The ruling was that

wherever he alighted he was bound to look before crossing the track.

It is suggested that Goodin was not intending to go to the station, but to his home on the same side of the tracks. That circumstance is immaterial. It existed in several of the cases above cited. Goodin had a right to rely on the assumption that no train would be allowed to come while passengers might properly be crossing the track.

One other matter deserves notice. Goodin was a daily traveler by that particular train and presumably knew that the express was scheduled to pass Lawnside only three minutes before the accommodation was due there, and it is argued that he should have had in mind the fact that it was behind time, as the trains had not passed one another at their usual point of passing. That argument was useful for the jury, but not conclusive for the court. I know of no rule of duty for a traveler on a railroad train to keep alert to such conditions. Within a few weeks there had been a change in the time table. Before the change the arrival at Lawnside of the accommodation preceded the passing of the express by nine minutes. It is too much to say that, as a matter of law, Goodin should have remembered the change and should have noticed that the express had not passed. Besides he had the protection of the company's own rule not to permit a train to come while his train was receiving or discharging passengers. It was not proved that he knew of this rule, but several of the decisions above cited hold, and I think rightly, that knowledge of such a rule by passengers may be presumed. For this reason also the Massachusetts case *ubi supra* is unsatisfactory, for it declares a contrary presumption.

A careful reading of the whole testimony convinces me that under the circumstances of this case the question of contributory negligence was for the jury.

The only other errors assigned relate to the beneficial right of the plaintiff individually in her suit as administratrix. Goodin left no child or descendant of a child and no parent. The plaintiff claimed as widow the entire benefit of the suit. *Pamph. L.* 1896, *p.* 134. If she were not such there could have been

no recovery under the declaration as framed, and, while the proof showed that the deceased left a sister, the case was not tried on any theory that recovery could be had in her interest. The measure of damages of course would have differed, and as the judge in his charge to the jury put the matter of damages on the basis of a recovery by a widow it is but fair to consider proof of that status as vital.

The judge, on the motion to nonsuit or direct a verdict, rightly refused to decide that there was no such proof. There had been a ceremonious marriage between Goodin and the plaintiff many years before, but it was conceded that soon afterward the plaintiff had learned that at the time of the marriage Goodin had a wife from whom he was separated. Cohabitation was nevertheless continued and the parties were reputed to be husband and wife. About 1892 the real wife died. Reliance is placed by the defendant upon the doctrine declared in chancery and approved in this court that where one of two persons knowing of an existing bar to his or her marriage perpetrates a fraud upon the other by going through a marriage ceremony, such marriage is void, and that, although such bar be subsequently removed, cohabitation and reputation thereafter as husband and wife will not justify a *presumption* of marriage. *Voorhees* v. *Voorhees,* 1 *Dick. Ch. Rep.* 411; *Collins* v. *Voorhees,* 2 *Id.* 315, 555. If the plaintiff's case had rested on presumption it would have failed, but such was not the fact. It rested upon the proof of an actual marriage after the first wife's death. Some proof of reputation of marriage was indeed admitted under objection and its admission is now assigned for error. Under the Voorhees case it was not evidential, but as it was of no avail whatever to the plaintiff it was immaterial and harmless to the defendant. In the Voorhees case Vice Chancellor Van Fleet concedes that a contract of marriage made *per verba de præsenti* amounts to an actual marriage and is valid, and in the case of *Stevens* v. *Stevens,* 11 *Dick. Ch. Rep.* 488, Vice Chancellor Pitney declares the law on the subject to the same effect, citing abundant authority. Dr. Bishop makes it quite plain that in this country, in the absence of prohibitive legislation, no more is

required to constitute a legal marriage than that the man shall declare in words of the present tense that the woman is his wife and that the woman shall assent. No witness need be present and no particular ceremony is necessary. *Bish. Mar., D. & S., chs.* XIV., XV., especially sections 299 and 313. The effect of a recent statute of this state applicable only to non-residents (*Pamph. L.* 1897, *p.* 378) need not now be considered.

The plaintiff by her own testimony made a *prima facie* case of such a marriage contract made directly after the first wife's death. True, no witness was present, but there was not the slightest reason to doubt the plaintiff's story and every reason to believe it. It had corroboration in the testimony of a niece of the plaintiff, to whom Goodin had said in 1892 or 1893, after the first wife's death, "your aunt now is my lawful wife." One of the exceptions assigned for error was the refusal to strike out this admission of marriage, but it was clearly competent evidence. *Bish. Mar., D. & S.,* §§ 1057, 1058.

The defendant called no witness and in no way weakened the *prima facie* proof of such marriage. Of course, the jury might have disbelieved the testimony, and doubtless the judge on request would have submitted the fact of marriage to the jury instead of assuming it as proved by undisputed testimony, but he was not asked to do so and no exception was taken to the charge. The exception was to his refusal to charge that the "same proceeding" was necessary "to make a common law marriage as was entered into before disability was removed." This seems to mean that a ceremonious marriage was requisite, and, of course, the judge properly refused the request.

I find no error in this judgment.

*For affirmance*—COLLINS, DIXON, LUDLOW, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH.   8.

*For reversal*—THE CHANCELLOR, LIPPINCOTT, VAN SYCKEL.   3.