Sullivan *v.* American Bridge Company, Appellant.

Argued October 10, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Philip L. Leidy,* and with him *William C. Bodine,* for appellant.

*Frank H. Warner,* and with him *Catherine A. Donahue,* for appellee.

OPINION BY KELLER, J., January 4, 1935:

This is a workmen's compensation case. The only real question involved is whether the claimant was the lawful wife of John Sullivan, an employee of defendant who was killed on April 7, 1933 while in the course of his employment.

The facts in the case may be stated as follows: On December 1, 1925 while claimant and John Sullivan were living in Camden, N. J., they decided to get married and went to the court house at Camden to get a marriage license. They were told that they must have two witnesses and wait forty-eight hours after the issuance of the license before they could get married. They wanted to be married at once, so decided to go to Elkton, Maryland, for that purpose. When they got

there they were told they would have to have a witness and as they did not have any, Sullivan said to claimant, "Will you marry me without a ceremony?" and she said "Yes." Thereupon he said "Well, I am your husband," and she said, "Yes, and I am your wife," and they went "back home" to the house of Mr. Sullivan's sister, in Camden, where they lived together as husband and wife. They stayed there two weeks and then moved to 220 State Street, Camden, and afterwards to Red Bank, N. J., and Allentown, Pa., and various other places where they always lived together as husband and wife and were so known and recognized by their associates. They lived together until July 1932, when by reason of his having no work she had to go to her parents' home, while he secured such work as he was able to do, but they corresponded with each other, his letters to her being addressed to Mrs. John Sullivan or Mrs. Esther Sullivan; one letter written to her on April 1, 1933, six days before his death, was most affectionate, calling her "My dear wife" and enclosing $20 of his wages and promising to send more at the next pay day, and signing himself "Hubby"; his Union book had written in it, in his handwriting, a reference to her as 'Mrs. John Sullivan'; his application for membership in the International Association of Bridge, Structural and Ornamental Iron Workers, contained a notation in his handwriting that in case of his death notice should be given 'Esther Sullivan,' 2012 Green St.—where they then resided—, and his insurance policy in the Prudential Insurance Co. was payable to "Mrs. Esther Sullivan"; and in the application he called the beneficiary, his 'wife.' The exhibits in the case,—which, by the way, are not printed in the record furnished us, as they should have been—make it clear that he recognized and regarded her as his wife. She was so introduced by him, in February 1930, to the landlord when he

rented the apartment in which they lived until July, 1932.

It seems to have been decided by the Court of Appeals of Maryland (See Richardson v. Smith, 80 Md. 89, 30 A. 568; Scott v. Independent Ice Co., 135 Md. 343, 109 A. 117; Knapp v. Knapp, 149 Md. 263, 131 A. 329) that a marriage is not valid in that State unless in addition to the civil contract some religious ceremony is performed. On the other hand, common law marriages, without any ceremony, are valid in New Jersey and Pennsylvania.

Appellant relies on the general rule that a marriage, if valid in the State where it is contracted, is valid everywhere; and its corollary, which is not so well established, that if the marriage is invalid in the State where it is contracted, it is invalid everywhere; and contends that as the attempted marriage in Maryland was invalid under the laws of that State, and there was no proof of any subsequent contract of marriage, *in verba de praesenti,* entered into between the parties, either in New Jersey or Pennsylvania (See Murdock's Est., 92 Pa. Superior Ct. 275, and cases therein cited), there never was a valid marriage between them and claimant never became his lawful wife. But the corollary abovementioned to the general rule, viz., that if the marriage is invalid in the State where it is contracted, it is invalid everywhere, was held by our Supreme Court to be subject to exceptions (See Phillips v. Gregg, 10 Watts 158, 168), saying "But our courts have not established, *e converso,* that marriages of citizens not good according to the place where celebrated, are universally and under all possible circumstances to be disregarded. The best course unquestionably is, to be married according to the laws of the country where the marriage takes place, for then no question can arise. But if this cannot be done on account of legal or religious difficulties, the law does not

say, 'that citizens shall not marry abroad according to the forms and ceremonies recognized as valid and binding in their own country.' The common law, under which we live, considers marriage in no other light than a civil contract; such a marriage as has been celebrated between these parties would be clearly good.''

It is unquestioned that the claimant and John Sullivan had no intention of entering into a meretricious relation. They went to the courthouse at Camden, N. J. and to Elkton, Md. for the express purpose of getting married. They intended to marry each other then —at that present time, not at some time in the future—and believed they had done so. They were under the impression that in using the words which they did they were entering into a valid marriage. They intended to do so and believed that they had contracted a valid marriage. There were no disabilities existing which prevented their contracting a valid marriage; and when they came back to New Jersey they believed they were lawfully married and from that time on acted towards each other as husband and wife. Had they done in New Jersey or Pennsylvania what they did in Maryland, it would have been a valid marriage anywhere. The words spoken were in the present tense and uttered with the intent of establishing the relation of husband and wife. The parties did not afterwards make a new contract *in verba de praesenti* in New Jersey, because they thought they had lawfully married each other in Maryland and never knew otherwise.

The Supreme Court of the United States, in very nearly the same circumstances, held that the subsequent conduct of the parties was equivalent to a declaration by each that they did, and during their joint lives were to, occupy the relation of husband and wife. In Travers v. Reinhardt, 205 U. S. 423, James Travers,

whose domicil was in the District of Columbia and Sophia V. Grayson, whose domicil was in West Virginia, were in Alexandria, Va., on August 15, 1865, when some sort of marriage ceremony was performed by a friend of Travers. She thought it was a real marriage by a minister, but he was not a minister. Immediately after the affair at Alexandria the parties—the woman from that time on using the name of Mrs. Travers—left Virginia and went to Shrewsbury, N. J., where, as husband and wife, they remained a short time, after which they went to Belair, Harford County, Maryland, living there, as husband and wife, at a rented place. In 1867, Travers purchased a farm in Talbot County, Maryland, on which he lived with the said Sophia, until some time in 1883, when that farm was sold and, on account of Travers' health, they removed to Point Pleasant, N. J. and purchased a property there, where they lived as husband and wife until his death that year. The court, speaking through Mr. Justice HARLAN, said, inter alia, ''From the 15th of August, 1865, up to his death, on the 1st of November, 1883,—a period of more than eighteen years,—Travers and Mrs. Travers continuously cohabited as *husband and wife*. During all that period they acted as if they were lawfully husband and wife, and uniformly held themselves out as sustaining that relation; and beyond all question they were regarded as husband and wife in the several communities in which they lived after leaving Alexandria in 1865. There is no proof that anyone coming in contact with them regarded them otherwise ...... That Travers recognized Mrs. Travers as his wife and held her out as such, appears from many facts [reciting them in detail] ........ Naturally, the first inquiry must have reference to what occurred at Alexandria, Virginia, in 1865, when, as the woman supposed,—in good faith, we think,—that there was a real, valid marriage between her and James Travers.

But we will assume for the purposes of this case only that that marriage was not a valid one under the laws of Virginia. We do this in deference to the decision of the Supreme Court of Appeals of Virginia in Offield v. Davis, 100 Va. 250, 263, 40 S. E. 910, in which that court, construing the above statute of that commonwealth, held it to be mandatory, not directory, and had abrogated the common law in force in Virginia, and that no marriage or attempted marriage, if it took place there, would be held valid there, unless it be shown to have been under a license, and solemnized according to the statute of that commonwealth. We will also assume, but only for the purposes of the present decision, and because of the earnest contentions of the appellants, that cohabitation in Maryland, as husband and wife, for more than fifteen years, and the recognition of that relation in the communities where they resided in that state, did not entitle James Travers and the woman Sophia to be regarded in that state as lawfully husband and wife. We make this assumption also because it appears here that James Travers and Sophia V. Grayson did not become husband and wife in virtue of any religious ceremony, and because it has been decided by the Court of Appeals of Maryland that in that state 'there cannot be a valid marriage without a religious ceremony,' although 'a marriage may be competently proved without the testimony of witnesses who were present at the ceremony.' Richardson v. Smith, 80 Md. 89, 93, 30 Atl. 568 ...... Did the law of New Jersey recognize them as husband and wife after they took up their residence in that state and lived together, in good faith, as husband and wife, and were there recognized as such? Upon the authorities cited [Voorhees v. Voorhees, 46 N. J. Eq. 411, 413, 414, 19 Atl. 172, 173; Atlantic City R. Co. v. Goodin, 62 N. J. L. 394, 400, 42 A. 333, 336; Stevens v. Stevens, 56 N. J. Eq. 488, 38 A. 460] this

question must be answered in the affirmative. We are of opinion that even if the alleged marriage would have been regarded as invalid in Virginia for want of license, had the parties remained there, and invalid in Maryland for want of a religious ceremony, had they remained in that state, it was to be deemed a valid marriage in New Jersey after James Travers and the woman Sophia, as husband and wife, took up their permanent residence there and lived together in that relation, continuously, in good faith, and openly, up to the death of Travers, being regarded by themselves and in the community as husband and wife. Their conduct towards each other in the eye of the public, while in New Jersey, taken in connection with their previous association, was equivalent, in law, to a declaration by each that they did, and during their joint lives were to, occupy the relation of husband and wife. Such a declaration was as effective to establish the status of marriage in New Jersey as if it had been made in words of the present tense after they became domiciled in that state.''

In our opinion the foregoing extracts from Justice HARLAN's opinion are also expressive of the law in this State. They differentiate the case from those where parties live together with the expressed intention of marrying at sometime in the future; and the relationship so established and maintained was not a meretricious one, but a legal marriage, recognized as such in this Commonwealth. Our Brother BALDRIGE, while President Judge of the Courts of Blair County, wrote a well-considered opinion, in which he reached the same conclusion, in Marich's Est., 8 D. & C. 645. See also, Hornbake v. Hornbake, 72 Pa. Superior Ct. 605; Holben's Est., 93 Pa. Superior Ct. 472; Thewlis's Est., 217 Pa. 307, 66 A. 519. It is not necessary to cite further authorities.

We pay little attention to rules of pleading in work-

544

men's compensation cases. They are not governed by the strict rules of common law pleading, or even by the practice established by statute for use in courts of common pleas. The Workmen's Compensation Law does not require, or even contemplate, that claims shall be prepared by skilled attorneys. The question before us is, does the evidence support the order.

We think it warranted the order of the board and the judgment of the lower court is accordingly affirmed.