OPINION OF THE COURT
Jasen, J.
On this appeal claimant-appellant Mary Mott asserts that she is the widow of John Mott by virtue of a common-law marriage allegedly contracted in the State of Georgia and seeks to recover death benefits pursuant to the Workers’ Compensation Law. (Workers’ Compensation Law, § 16.) The Workers’ Compensation Board, however, denied the benefits sought upon the ground that John and Mary Mott were never legally married. The issue on this appeal is whether the Workers’ Compensation Board erred in failing to properly apply the law of the State of Georgia in determining the Motts’ marital status.
In 1964, Mary and John Mott took up residence together in Islip, New York. From that time until the time of John’s death in a work-related accident in 1973, the Motts constantly lived together, in claimant’s words "as husband and wife”. During the course of this relationship, the Motts conducted much of their legal and financial business as if they were in fact married. Bank loans were apparently applied for together, certain tax records adjusted, and the like. Indeed, upon John’s death, Mary Mott was awarded limited letters of administration as John Mott’s "widow”. However, notwithstanding the above incidents of "marriage”, it is undisputed that John and Mary Mott were never ceremonially married in New York or elsewhere. Claimant concedes as much.
Claimant instead predicates her claim for death benefits upon the existence of an alleged common-law marriage, contracted in the State of Georgia. She testified at the hearing of this matter that she and Mr. Mott traveled to Georgia on several occasions, staying there for weeks at a time with her daughter. She claims that the couple intended to take up permanent residence in Georgia, to start a business there, and to make Georgia their home, although it is undisputed that none of these intentions were ever fulfilled. Claimant also asserts that while in Georgia she and decedent lived together *292 as husband and wife and represented themselves to the local community as such. On the basis of this evidence, claimant concludes that a valid common-law marriage was effected in Georgia.
The Workers’ Compensation Board, however, concluded that John and Mary Mott were not legally married and, as a result, denied Mary’s claim for death benefits. The board found that "the decedent and Mary Mott were residents of New York State” and held that "the parties marital status must be determined under New York State Law which does not recognize common law marriages, with the exception of a common law marriage previously declared valid in another State.” The board then concluded that "[t]he parties’ trip to the State of Georgia was merely a visit and the parties returned to New York State’s jurisdiction without having effected a common law marriage in Georgia.” The Appellate Division, finding that the board’s determination was supported by substantial evidence, affirmed, one Justice dissenting. There should be a reversal.
While it is clearly within the province of the Workers’ Compensation Board to decide, as a factual matter, whether claimant and John Mott were ever legally married, the board must weigh such facts as it finds against a proper legal standard. Thus, before the court can undertake a review of the administrative fact-finding process which resulted in a finding that the Motts were not married, we must first determine if a proper legal standard was used in arriving at this conclusion. If an improper legal standard was used, review of the fact-finding process is impossible.
It has long been settled law that although New York does not itself recognize common-law marriages (L 1933, ch 606; Domestic Relations Law, § 11; see, e.g., Matter of Benjamin, 34 NY2d 27, 30), a common-law marriage contracted in a sister State will be recognized as valid here if it is valid where contracted (see, e.g., Matter of Watts, 31 NY2d 491, 495; Shea v Shea, 294 NY 909; Matter of Pecorino, 64 AD2d 711). The law to be applied in determining the validity of such an out-of-State marriage is the law of the State in which the marriage occurred. (Matter of Watts, 31 NY2d 491, supra; Matter of Farber v U. S. Trucking Corp., 26 NY2d 44, 47.) Moreover, this rule has been specifically applied to cases involving entitlement to workers’ compensation death benefits. (Matter of Lieblein v Charles Chips, Inc., 32 AD2d 1016, decision on *293 remand affd 28 NY2d 869.) Thus, in determining whether claimant is entitled to death benefits as the widow of John Mott, the Workers’ Compensation Board must first determine whether the Motts were married under the law of the State of Georgia.
Common-law marriages are legal in Georgia and have been recognized in that State since at least 1860. (Brown v Brown, 234 Ga 300.) While the burden of proving the existence of such a marriage is on the party asserting its validity (id.; see, also, Drawdy v Hesters, 130 Ga 161), all that need be shown to establish a marriage is that the parties are able to contract, that a contract of marriage was made and that the marriage was consummated according to the law. (Ga Code Ann, § 53-101.)
Proof of the existence of a contract of marriage must include proof of a "present intent to marry” in the State of Georgia. (Peacock v Peacock, 196 Ga 441.) However, such proof can consist of circumstantial evidence including "the act of living together as man and wife, holding themselves out to the world as such, and repute in the vicinity and among neighbors and visitors that they are such, and indeed all such facts as usually accompany the marriage relation and indicate the factum of the marriage.” (Murray v Clayton, 151 Ga App 720, 721, quoting Clark v Cassidy, 62 Ga 407, 411.) No public or private de facto ceremony is required (Alberson v Alberson, 237 Ga 622) and for all that appears, no minimum stay in Georgia is required (Ga Code Ann, § 53-101). In sum, Georgia law appears to be quite liberal in allowing such unions, subject only to the difficulty which a litigant may have in convincing a fact finder of the existence of an actual contract.
Based upon the foregoing review of the law of Georgia and of this State,, it appears that the determination of the Workers’ Compensation Board was premised upon an erroneous view of applicable law. First, the board appeared to assume that New York recognizes only out-of-State marriages "previously declared valid in another state.” As noted earlier, this view is too limited. (See, e.g., Matter of Watts, 31 NY2d 491, 495, supra.) Second, the board also assumed that a mere "visit” to Georgia could not result in a valid Georgia marriage. Given the apparent liberality of the Georgia rule with respect to common-law marriages, this too was error. Finally, the board failed even to consider the behavior of the parties in New York as evidence of their intent to marry. While such *294 evidence is not alone determinative, and is of course secondary to evidence of the parties’ conduct in Georgia, it is at the very least relevant to show whether the parties viewed themselves as man and wife upon their trip to Georgia. (Cf. Matter of Farber v U. S. Trucking Corp., 26 NY2d 44, supra.)
Having concluded that the board applied an improper standard of law on the issue of marital status, we deem it inappropriate to express our view as to whether the evidence in this case would support a finding of a common-law marriage had the proper legal standard been applied. This question must be decided by the administrative agency. The case must, therefore, be remanded to the Workers’ Compensation Board for a redetermination of the factual question of whether claimant and John Mott effected a common-law marriage in the State of Georgia, based upon the legal standards enunciated herein. (See Matter of Lieblein v Charles Chips, Inc., 32 AD2d 1016, decision on remand affd 28 NY2d 869, supra.)
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division, Third Department, with directions to remand for further proceedings in accordance with this opinion.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.