**Edith L. RENSHAW,**
**Plaintiff-Appellant,**

v.

**Margaret HECKLER, as Secretary of United States Department of Health and Human Services, Defendant-Appellee.**

**No. 581, Docket 85–6272.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 20, 1985.

Decided March 31, 1986.

---

James R. Sheldon, Jr., Buffalo, N.Y. (Neighborhood Legal Services, Inc., Buffalo, N.Y., of counsel), for plaintiff-appellant.

Jacqueline Stover, Sp. Asst. U.S. Atty. for the W.D. of N.Y. (Salvatore R. Martoche, U.S. Atty. for the W.D. of N.Y., C. Donald O'Connor, Asst. U.S. Atty. for the W.D. of N.Y., of counsel), for defendant-appellee.

Before MESKILL, PRATT, Circuit Judges, and MacMAHON, Senior District Judge for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

This appeal presents a single question: did the Secretary of Health and Human Services and the district court err in determining that, under Pennsylvania law, plaintiff Edith L. Renshaw was not the common-law wife of the decedent Albert Renshaw, and therefore not entitled to widow's insurance benefits under Title II of the Social Security Act. Finding that Edith and Albert Renshaw had entered into a valid common-law marriage under the laws of the Commonwealth of Pennsylvania, we reverse the decision of the district court and remand to the Secretary for action consistent with this opinion.

## BACKGROUND

After a brief courtship following their respective divorces from other individuals, Albert and Edith Renshaw began living together on July 5, 1958 in Baltimore, Maryland. Although the couple did not have a formal ceremonial marriage, Mrs. Renshaw testified that when she and Mr. Renshaw began living together they agreed to live "just as though [they] were married" and that they considered themselves "husband and wife". The evidence supports her assertion.

Edith immediately adopted the last name Renshaw and a short time later, changed the name on her social security card—the only identification she had at that time—to reflect her new status. The couple told friends and relatives that they had been married, and introduced each other to relatives, friends, and acquaintances as husband and wife.

Mr. Renshaw gave Mrs. Renshaw a wedding band shortly after they began to live together, and throughout the 21 years they lived together they celebrated July 5 as their marriage anniversary. The couple never separated or broke up, and Mrs. Renshaw testified that neither ever had relationships with others during this time. Moreover, the couple filed joint tax returns as husband and wife, and Mr. Renshaw listed Mrs. Renshaw as his wife and beneficiary on his life insurance policy.

Immediately after their marriage the Renshaws lived in Maryland for several months. After that, they moved to Buffalo, New York, where they lived for the next twenty years. During this time, the couple had one child, Lorna Gail Renshaw.

On approximately eight occasions between 1968 and 1975, the Renshaws drove

to Virginia and North Carolina to visit relatives. Since the visits required a lengthy drive each way, the Renshaws always spent the night at the Port Motel in Port Treverton, Pennsylvania, a state that recognizes common-law marriage. Their daughter always accompanied them on these trips; on occasions when Mr. Renshaw's mother was in Buffalo, she also traveled with them.

It is unknown whether the couple signed the register as husband and wife since the motel records were unavailable and since Mrs. Renshaw never accompanied her husband to the motel office when he signed the guest register. However, she did recall hearing him make reservations by phone and specifying the date and the fact that he would be there with himself, his wife, and his daughter.

While at the motel in Pennsylvania, the Renshaws would check into their room, eat dinner at the restaurant, walk around the motel grounds, retire for the evening, and continue their journey the next morning. With the exception of a coincidental meeting with her brother, who believed that she and Mr. Renshaw were legally married, the couple never met anyone they knew while in Pennsylvania.

## DISCUSSION

Section 202(e) of the Social Security Act, 42 U.S.C. § 402(e), provides that a widow of an individual who died while fully insured is entitled to widow's insurance benefits, if she meets certain other conditions not in issue on this appeal. Section 216(h)(1)(A) of the Social Security Act, 42 U.S.C. § 416(h)(1)(A), provides that an applicant is the widow of an insured individual if the courts of the state in which the insured individual was domiciled at the time of his death would find that the applicant and insured individual were validly married at the time of his death. Since Mr. and Mrs. Renshaw were domiciled in New York at the time of his death, New York law governs her status as a widow.

Although New York does not itself recognize common-law marriages, a common-law marriage contracted in another state will be recognized as valid in New York if it is valid where contracted. *Mott v. Duncan Petroleum Trans.*, 51 N.Y.2d 289, 292, 434 N.Y.S.2d 155, 157, 414 N.E.2d 657, 659 (1980). The law to be applied in determining the validity of such a marriage is the law of the state in which the marriage occurred. *Id.* Since plaintiff claims that she contracted a common-law marriage with her husband in Pennsylvania during their travels through the state, the appropriate law to apply is the law of Pennsylvania.

The Commonwealth of Pennsylvania recognizes the institution of common-law marriage. In re *Estate of Stauffer*, 504 Pa. 626, 476 A.2d 354, 356 (1984). Believing that common-law marriage is a fruitful source of perjury and fraud, however, the Pennsylvania courts have imposed a heavy burden on one who grounds his or her claim on an allegation of common-law marriage. *Id.*

Generally, a common-law marriage may be created by uttering words in the present tense with the intent to establish a marital relationship, *Commonwealth v. Sullivan*, 484 Pa. 130, 398 A.2d 978, 980 (1979); but where no such utterance is proved, Pennsylvania law also permits a finding of marriage based on reputation and cohabitation when established by satisfactory proof. In re *Estate of Wagner*, 398 Pa. 531, 159 A.2d 495, 498 (1960).

In reaching his determination that the Renshaws had not entered into a valid common-law marriage under Pennsylvania law, the magistrate—to whom the case was referred on consent of the parties—noted that "if the facts had shown that the Renshaws lived their lives primarily in Pennsylvania, and conducted themselves there as the evidence indicates they conducted their lives in New York, their marriage would be declared a valid common-law marriage by a Pennsylvania court." "Under this hypothetical", he continued, "the facts would show the plaintiff clearly was entitled to the presumption of marriage by her showing of the continuous relationship and the

holding of themselves out as husband and wife." Magistrate's Decision and Order, at 9. The magistrate declined to make such a finding, however, since "at best only 16 days out of Mr. Renshaw's lifetime were spent in Pennsylvania [and] the overwhelming bulk of the supporting evidence rests on actions taken outside of Pennsylvania in non-common law states." Relying on *Peart v. T.D. Bross Line Construction Co.*, 45 A.D.2d 801, 357 N.Y.S.2d 53 (3d Dep't 1974), the magistrate concluded that absent proof of some present intent to marry while in Pennsylvania, the parties had not contracted a valid common-law marriage under Pennsylvania law.

The facts admittedly present a unique situation. Although we have found no Pennsylvania cases directly on point, New York courts have recognized valid common-law marriages under similar factual situations. *McCullon v. McCullon*, 96 Misc.2d 962, 410 N.Y.S.2d 226 (Erie County 1978) (valid common-law marriage where New York residents vacationed in Pennsylvania for two to four weeks at a time over a 30-year period); *Skinner v. Skinner*, 4 Misc.2d 1013, 150 N.Y.S.2d 739 (New York County 1956) (valid common-law marriage found on the basis of a three week visit to Pennsylvania). *But see Peart v. T.D. Bross Line Construction Co.*, 45 A.D.2d 801, 357 N.Y.S.2d 53 (3d Dep't 1974) (three or four days' stay as a cohabitating couple in Pennsylvania did not establish the existence of a common-law marriage). We think that a New York court would find that the Renshaws had contracted a valid common-law marriage in Pennsylvania.

Although Mrs. Renshaw furnished no proof of words in the present tense establishing a marriage contract while in Pennsylvania, she did present proof of cohabitation and reputation. The Renshaws' stays in Pennsylvania were admittedly short; but they cohabitated during the entire time that they were there. While the evidence of reputation is not extensive, they held themselves out as husband and wife to every individual they knew that they saw in Pennsylvania—his mother, her brother, and their daughter. Moreover,

Mrs. Renshaw testified that when Mr. Renshaw made reservations over the phone, he indicated on at least one occasion that the reservations were for himself, his wife, and their daughter.

In different circumstances, such facts alone might not prove sufficient. But the uncontroverted evidence as to their 21 year relationship, their intent to live as husband and wife during that time, and the fact that until these proceedings began all of their relatives, friends, and acquaintances assumed that they were married, negates the possibility that Mrs. Renshaw is attempting to engage in perjury or fraud and provides the additional assurance that Pennsylvania courts seem to have required before giving judicial approval to such a relationship. *Cf. Chlieb v. Heckler*, 777 F.2d 842 (2d Cir.1985) (absent other evidence of marriage relationship and in light of contrary intent, couple's two nights in Pennsylvania and one night in Ohio failed to establish common-law marriage).

In reaching our conclusion, we recognize that there is no evidence of some present tense intent to create the marriage while in Pennsylvania. The magistrate found this absence fatal to Mrs. Renshaw's claim, reasoning that "some conscious recognition by the parties that they intended to establish or at least consciously reaffirm their marriage" while in Pennsylvania was required. We disagree.

In *Sullivan v. American Bridge Company*, 115 Pa.Super. 536, 176 A. 24 (1935), a couple had exchanged marriage vows in a state that did not recognize common-law marriages while under the impression that in using the words they did use they were entering into a valid marriage. Subsequently, the couple moved to Pennsylvania. When the husband died, the widow sought benefits under the workman's compensation act. In objecting to her claim that she was the legal widow of her husband, her husband's employer relied

> on the general rule that a marriage, if valid in the state where it is contracted, is valid everywhere; and its corollary,

which is not so well established, that, if the marriage is invalid in the state where it is contracted, it is invalid everywhere, and * * * that, as the attempted marriage in Maryland was invalid under the laws of that state, and there was no proof of any subsequent contract of marriage, in *verba de praesenti*, entered into between the parties, * * * in * * * Pennsylvania * * * there never was a valid marriage between them, and claimant never became his lawful wife.

*Id.,* 176 A. at 25. The Pennsylvania court reasoned that the corollary to the general rule—that if the marriage is invalid in the state where it is contracted it is invalid everywhere—had been held subject to exceptions by the Supreme Courts of both Pennsylvania and the United States. *See Phillips v. Gregg,* 10 Watts 158, 168 (1840); *Travers v. Reinhardt,* 205 U.S. 423, 27 S.Ct. 563, 51 L.Ed. 865 (1907). The court held that, even in the absence of a "new contract in *verba de praesenti*" in Pennsylvania, "the subsequent conduct of the parties was equivalent to a declaration by each that they did, and during their joint lives were to, occupy the relation of·husband and wife." *Sullivan,* 176 A. at 25. We think that the Renshaws' conduct while in Pennsylvania and elsewhere is similarly sufficient to support finding such a declaration here, and conclude that the Renshaws entered into a valid common-law marriage under Pennsylvania law.

If the Secretary's findings as to any fact are supported by substantial evidence in the record, they should not be disturbed by a court on review. 42 U.S.C. § 405(g). Under Pennsylvania law, however, the question as to whether a person has been legally married to another is a mixed question of law and fact for the purpose of review, In re *Cummings Estate,* 330 Pa.Super. 255, 479 A.2d 537, 541 (1984), and since the underlying facts are undisputed, we are not bound by the substantial evidence standard of review on this issue. Accordingly, we hold that the Secretary erred in finding that the Renshaws had not entered into a valid common-law marriage.

## CONCLUSION

The judgment of the district court is reversed and the case is remanded to the Secretary for the purpose of determining: (1) whether Edith Renshaw, as the legal widow of Albert Renshaw, is eligible for widow's insurance benefits, and (2) the amount of benefits due.