■ In the Matter of the Estate of RUDOLPH T. DANZA, Deceased. STEVEN DANZA, as Executor of RUDOLPH T. DANZA, Deceased, Appellant; SUSAN SCHLIESSMAN, Respondent.—In a proceeding to determine the validity of an election made by an alleged surviving spouse, the executor appeals from an order of the Surrogate's Court, Queens County (Laurino, S.), dated January 29, 1991, which denied his motion for summary judgment dismissing the notice of election.

Ordered that the order is reversed, on the law, with costs payable by the respondent personally, and the executor's motion for summary judgment dismissing the notice of election is granted.

The respondent, Susan Schliessman, claiming that she is the surviving common-law spouse of the decedent, Rudolph T. Danza, filed a notice of election against the decedent's will. The respondent claims that she and the decedent entered into a valid common-law marriage in February 1983, when they took a three-day "honeymoon" to a resort in the Poconos in Pennsylvania. The appellant, the executor of the estate, moved for summary judgment dismissing the notice of election. The Surrogate found that there were issues of fact precluding summary judgment. We now reverse.

Common-law marriages were abolished in New York in 1933 (L 1933, ch 606; Domestic Relations Law § 11; *Matter of Mott v Duncan Petroleum Transp.,* 51 NY2d 289, 292), but "a common-law marriage contracted in [another] State will be recognized as valid here if it is valid where contracted * * *. The law to be applied in determining the validity of such an out-of-State marriage is the law of the State in which the marriage occurred" *(Matter of Mott v Duncan Petroleum Transp., supra,* at 292).

"Marriage is a civil contract in Pennsylvania, but '[t]he contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time' " *(Dozack v Dozack,* 137 AD2d 317, 318, quoting from *Estate of Gavula,* 490 Pa 535, 540, 417 A2d 168, 171). However, " '[b]ecause the courts have regarded common law marriage as a fruitful

source of fraud and perjury, common law marriages are to be tolerated but not encouraged. [Therefore] "the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage" ' " *(Cross v Cross,* 146 AD2d 302, 306, quoting from *In re Estate of Kovalchick,* 345 Pa Super 229, 232, 498 A2d 374, 376). Furthermore, Pennsylvania law requires "even closer scrutiny of a claimed common law marriage 'where one of the parties [to the purported marriage] is dead and the claim, so grounded, is to share in the distribution of the estate' " *(Duzack v Duzack, supra,* at 319, quoting from *Estate of Gavula,* 490 Pa 535, 540, 417 A2d 168, 171, *supra).*

Here, in support of her claim that she and the decedent were married, the respondent asserts that they lived together and held themselves out as husband and wife. However, where, as here, the decedent was concededly married to another person when he began to cohabit with the respondent, the relationship was illicit and meretricious at its inception. Under Pennsylvania law, such a relationship " 'is presumed to so continue during the cohabitation of the parties. That presumption will be rebutted only if the consent of both parties to enter into a valid marriage is established by *clear and convincing* evidence' " *(Cross v Cross, supra,* at 307, quoting from *In re Estate of Kovalchick,* 345 Pa Super 229, 234, 498 A2d 374, 377, *supra).* "[I]n order to establish a common-law marriage there must be an exchange of words in the present tense spoken with the specific purpose that the legal relationship of the husband and wife be thereby created" *(Cross v Cross, supra,* at 307).

Here, there is no evidence to show that, after the removal of the impediment to his remarriage, nor at any other time, the decedent ever consented to enter into a valid common-law marriage with the respondent. On the contrary, the evidence shows that the decedent did not consider himself to be married to the respondent. In this respect, in January 1986 (three years after the respondent claims that she and the decedent were married) the decedent commenced a paternity suit, seeking a declaration that he was the father of the respondent's two out-of-wedlock children, one of whom was born in 1984, at a time the respondent claims she and the decedent were married. Moreover, income tax returns filed by the decedent for the years 1984 through 1988, show that he filed as an unmarried head of household. Accordingly, we conclude that there is no question of fact as to whether the respondent and the decedent were married, and the executor's motion for

summary judgment dismissing the respondent's notice of election should be granted. Rosenblatt, J. P., Lawrence, Eiber and Copertino, JJ., concur.