■ In the Matter of MARIA-IRENE D., an Infant. CARLOS A. et al., Appellants. HAN MING T., Respondent. [61 NYS3d 221]—

Order, Family Court, New York County (Stewart H. Weinstein, J.), entered on or about March 16, 2017, which, to the extent appealed from as limited by the briefs, upon effectively granting reargument, adhered to its prior order, entered on or about December 21, 2016, which had granted respondent's motion to vacate petitioner's adoption of the subject child, unanimously affirmed, without costs. Appeal from order entered on or about December 21, 2016, unanimously dismissed, without costs, as superseded by the appeal from the order granting reargument.

Appellant Marco D. and respondent Han Ming T. (Ming), both British citizens, entered a civil union in the United Kingdom (UK) in 2008, which they converted into a legal mar-

riage in 2015, effective as of the date of their civil union. In 2013, the couple jointly executed an egg donor and surrogacy agreement with the intention of becoming parents. Both contributed sperm, and ultimately the embryo fertilized by Marco's sperm was transferred to the surrogate. The child, named after both Marco's and Ming's mothers, was born in September 2014. The couple retained counsel, and commenced a proceeding in Missouri to terminate the egg donor and surrogate's parental rights to the child. In October 2014, the Missouri court awarded Marco, as the genetic father, "sole and exclusive custody" of the child. Marco, Ming, and the child returned to Florida, where they lived as a family until October 2015, when Ming returned to the UK to seek employment.

At some point in or after 2013, Marco entered a relationship with petitioner Carlos A., and they moved to New York with the child after Ming went to the UK. In January 2016, Carlos commenced a petition in New York to adopt the child. In the adoption papers, petitioner disclosed that Marco and Ming were married in 2008, but alleged that they had not lived together continuously since 2012 and that Carlos and Marco had been caring for the child since her birth. A home study report stated that Marco and Ming legally separated in 2013 and had no children together. Ming's role in the surrogacy process was not disclosed to Family Court, nor was the Florida divorce action commenced by Ming in March 2016 in which he sought joint custody of the child.

Family Court granted the adoption petition in May 2016. After Ming learned of the adoption, he moved to vacate it, on the ground that relevant facts had not been disclosed to the court and that he was entitled to notice of the adoption and an opportunity to be heard since he had parental rights. Family Court granted Ming's motion, and vacated the adoption pursuant to Domestic Relations Law § 114 (3), finding that Carlos and Marco (together, appellants) had made material misrepresentations to the court that provided sufficient cause to vacate, and that Ming was entitled to notice of the adoption proceeding. The court left open the possibility that Carlos could pursue adoption of the child, if appropriate, after resolution of the divorce proceedings. Upon Carlos's motion for reargument, the court adhered to its prior determination.

Family Court providently exercised its discretion in vacating the adoption. It is undisputed that Ming and Marco's marriage in the UK was effective as of August 2008. New York courts as a matter of comity will recognize such out-of-state marriages (see e.g. Matter of Mott v Duncan Petroleum Trans., 51 NY2d

289, 292 [1980]). The child was born in 2014, as the result of jointly executed surrogacy agreements, at a time when the couple was considered legally married, thus giving rise to the presumption that the child is the legitimate child of both Marco and Ming (*see* Domestic Relations Law § 24; *Matter of Fay*, 44 NY2d 137 [1978], *appeal dismissed* 439 US 1059 [1979]). After the child was born, Marco, Ming and the child lived together as a family, and the couple took affirmative steps in the UK to establish Ming's parental rights in accordance with UK law. Under these circumstances, the Missouri judgment in 2014 awarding Marco sole and exclusive custody of the child, as opposed to the egg donor and surrogate, was insufficient to rebut the presumption of legitimacy.

The prevailing law at the time the adoption petition was granted does not compel a different result. The case law relied upon by appellants is distinguishable because, unlike the parties in those cases, Marco and Ming were deemed legally married when they embarked on the surrogacy process to have a child together (*see Debra H. v Janice R.*, 14 NY3d 576 [2010], *cert denied* 562 US 1136 [2011]). Accordingly, the child was born in wedlock, and Ming was entitled to notice of the adoption proceeding (*see* Domestic Relations Law § 111 [1] [b]). Under the Court of Appeals' most recent decision concerning parental standing (*Matter of Brooke S.B. v Elizabeth A.C.C.*, 28 NY3d 1 [2016]), Ming's claim to have standing as a parent is even stronger.

Petitioner's failure to disclose the Florida divorce action, in which the child was named as a child of the marriage and Ming sought joint custody, provided another ground to vacate the adoption (*see* Domestic Relations Law § 114 [3]). The adoption petition required petitioner to give a sworn statement that the child to be adopted was not the subject of any proceeding affecting his or her custody or status. Even though petitioner was aware of the Florida divorce action before finalization of the adoption, he failed to disclose the action to the court, instead averring in a supplemental affidavit that there had been no change in circumstances "whatsoever" since the filing of the adoption petition.

We have considered appellants' arguments, including that an attorney for the child should have been appointed (*see* Family Ct Act § 249), and find them unavailing. Concur—Tom, J.P., Mazzarelli, Andrias, Oing and Singh, JJ.