J-A28013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT N. HARTENSTINE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JERYL BULLOCK AND JAMES F. CARNEY, ESQUIRE | |
| Appellee | No. 250 EDA 2015 |

Appeal from the Judgment Entered December 23, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-17098

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.:               **FILED JUNE 03, 2016**

In this appeal, Appellant, Robert N. Hartenstine, specifically challenges the order entered in the Montgomery County Court of Common Pleas, which sustained the preliminary objections filed by Appellee, James F. Carney, Esquire ("Attorney Carney") and dismissed Mr. Hartenstine's complaint for wrongful use of civil proceedings and abuse of process.[1]  We affirm in part, reverse in part, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows.

_____

[1] The court's order sustaining Attorney Carney's preliminary objections was made final by the court's entry of default judgment against the remaining defendant, Jeryl Bullock, and the assessment of damages in the amount of $68,734.00.  (**See** Judgment entered 12/23/14; R.R. at 137a).  We discuss this concept more fully later in the disposition.  Ms. Bullock is not a party to this appeal.

Mr. Hartenstine and Jeryl Bullock began dating around 1990. During their relationship, Ms. Bullock primarily lived in a mobile home on property owned by Mr. Hartenstine in Lower Pottsgrove Township, Pennsylvania. Mr. Hartenstine resided at his home in Philadelphia throughout the relationship. The parties dispute when the relationship ended; Mr. Hartenstine claims the relationship ceased in 2000, while Ms. Bullock contends the relationship concluded in 2008. Following dissolution of their relationship, Mr. Hartenstine asked Ms. Bullock to pay the real estate taxes and insurance if she wanted to continue living in her mobile home on his property. Ms. Bullock did not comply with Mr. Hartenstine's request and, in March 2011, Ms. Bullock blocked his access to the property.

On or around May 5, 2011, Mr. Hartenstine filed an eviction action against Ms. Bullock. Mr. Hartenstine subsequently withdrew the eviction complaint while the parties attempted to reach a settlement. When settlement efforts proved unsuccessful, Mr. Hartenstine filed a second eviction action on September 16, 2011, scheduled to be heard on October 3, 2011. On October 3, 2011, Attorney Carney appeared in court as counsel for Ms. Bullock. Before the court commenced the hearing on the eviction action, Attorney Carney informed the court he had filed a divorce complaint on September 30, 2011, on behalf of Ms. Bullock against Mr. Hartenstine. Attorney Carney served Mr. Hartenstine with the divorce complaint at that time. The divorce complaint alleged Ms. Bullock and Mr. Hartenstine were

married at common law, and sought, *inter alia*, equitable distribution, alimony, and alimony *pendente lite*. Based on the filing of the divorce complaint, the court determined the matter should proceed in family court and dismissed Mr. Hartenstine's eviction complaint without prejudice.

On January 24, 2012, Mr. Hartenstine filed preliminary objections to the divorce complaint, claiming the complaint failed to provide the time and place of the alleged common-law marriage. The court granted Ms. Bullock leave to amend, and on February 21, 2012, Attorney Carney filed an amended divorce complaint on Ms. Bullock's behalf. The amended divorce complaint alleged: "The parties are married at common law on August 4, 1995[,] in Baltimore, Maryland." (**See** Amended Divorce Complaint at 1 ¶ 4, attached as Exhibit B to Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock, filed 6/5/14; R.R. at 21a).

On July 20, 2012, Mr. Hartenstine filed a petition for declaratory judgment, seeking a court ruling that no common-law marriage existed. Ms. Bullock filed a response on August 20, 2012. The court held hearings on the petition on June 10-11, 2013. On July 8, 2013, the family court issued findings of fact and conclusions of law, granting Mr. Hartenstine's request for declaratory relief. The family court concluded, *inter alia*, that Ms. Bullock failed to prove she and Mr. Hartenstine uttered the necessary words of present intent to create a common-law marriage. (**See** Family Court's Findings of Facts and Conclusions of Law at 2 ¶ 1, attached as Exhibit D to

Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock; R.R. at 36a). Following the family court's ruling, Mr. Hartenstine recommenced the eviction action on August 26, 2013. The court granted Mr. Hartenstine possession in the eviction action on September 17, 2013.

In Mr. Hartenstine's complaint against Ms. Bullock and Attorney Carney, filed on June 5, 2014, he alleged wrongful use of civil proceedings (in violation of the Dragonetti Act at 42 Pa.C.S.A. § 8351 *et seq.*) and abuse of process. At count one (wrongful use of civil proceedings), Mr. Hartenstine averred, *inter alia*, Attorney Carney and Ms. Bullock acted without probable cause and in a grossly negligent manner when they filed the divorce complaint because they claimed Mr. Hartenstine and Ms. Bullock formed a common-law marriage in a state that does not recognize common-law marriage. At count two (abuse of process), Mr. Hartenstine asserted, *inter alia*, Attorney Carney and Ms. Bullock wrongfully used the divorce action as a tactical weapon against Mr. Hartenstine, in response to the eviction action, to coerce Mr. Hartenstine to drop or settle the eviction action. Mr. Hartenstine also sought punitive damages at both counts of the complaint.

On July 22, 2014, Attorney Carney filed preliminary objections based on legal insufficiency. Regarding the wrongful use of civil proceedings count, Attorney Carney claimed, *inter alia*, he had probable cause to initiate the divorce action on behalf of Ms. Bullock where there was a "legal path" to a finding of common-law marriage under the facts of this case, even where the

court ultimately decided no common-law marriage existed. Attorney Carney maintained the family court's lengthy evaluation of the arguments and evidence presented over the course of a two-day hearing demonstrated Attorney Carney had some legal basis for filing the divorce action on Ms. Bullock's behalf. Attorney Carney averred Mr. Hartenstine's complaint contained no support for gross negligence. With respect to the abuse of process count, Attorney Carney contended, *inter alia*, Mr. Hartenstine failed to show Attorney Carney committed any act unauthorized by the divorce proceeding. Attorney Carney further moved to strike the request for punitive damages at both counts of the complaint where Mr. Hartenstine failed to allege facts demonstrating Attorney Carney acted with malice.

The court sustained Attorney Carney's preliminary objections on December 19, 2014, and dismissed Mr. Hartenstine's claims against him. On December 23, 2014, the court entered default judgment against Ms. Bullock for her failure to respond to the complaint and assessed damages against her in the amount of $68,734.00. Mr. Hartenstine timely filed a notice of appeal on January 7, 2015. On January 14, 2015, the court ordered Mr. Hartenstine to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); he timely complied on February 3, 2015.

Mr. Hartenstine raises the following issues for our review:

> WAS THE ORDER APPEALED FROM A FINAL ORDER SUCH THAT THE PENNSYLVANIA SUPERIOR COURT HAS

JURISDICTION TO HEAR THIS APPEAL?

DID THE TRIAL COURT ABUSE ITS DISCRETION AND/OR COMMIT AN ERROR OF LAW BY SUSTAINING A PRELIMINARY OBJECTION TO A DRAGONETTI ACT VIOLATION WHERE THE COMPLAINT PROPERLY PLED THE ABSENCE OF PROBABLE CAUSE AND [ATTORNEY CARNEY'S] GROSS NEGLIGENCE IN FILING A DIVORCE ACTION EVEN THOUGH PENNSYLVANIA LAW DID NOT RECOGNIZE THE EXISTENCE OF A COMMON LAW MARRIAGE WHERE THE ALLEGED MARRIAGE OCCURRED IN A STATE WHICH DID NOT RECOGNIZE COMMON LAW MARRIAGE AND THE MARRIAGE WAS NOT OTHERWISE RECOGNIZED?

DID THE TRIAL COURT ABUSE ITS DISCRETION AND/OR COMMIT AN ERROR OF LAW BY SUSTAINING A PRELIMINARY OBJECTION TO AN ABUSE OF PROCESS CLAIM WHERE THE COMPLAINT PROPERLY PLED THAT [ATTORNEY CARNEY] INSTITUTED AND MAINTAINED A DIVORCE ACTION FOR THE IMPROPER PURPOSE OF COERCING A SETTLEMENT IN ANOTHER UNRELATED PENDING MATTER DESPITE THE ABSENCE OF A LEGALLY RECOGNIZABLE MARRIAGE TO SUPPORT A REQUEST FOR A DIVORCE?

DID THE TRIAL COURT ABUSE ITS DISCRETION AND/OR COMMIT AN ERROR OF LAW BY SUSTAINING A PRELIMINARY OBJECTION TO A DEMAND FOR PUNITIVE DAMAGES, SINCE THE COMPLAINT SET FORTH ALLEGATIONS OF OUTRAGEOUS AND MALICIOUS CONDUCT INCLUDING THE SERVICE OF [A] LEGALLY UNSUPPORTABLE DIVORCE COMPLAINT AT AN EVICTION PROCEEDING?

(Mr. Hartenstine's Brief at 4-5).[2]

In his first issue, Mr. Hartenstine argues the December 19, 2014 order

sustaining Attorney Carney's preliminary objections resolved all claims

---

[2] For purposes of disposition, we have reordered Mr. Hartenstine's issues.

against Attorney Carney. Mr. Hartenstine asserts the court entered a default judgment against Ms. Bullock on December 23, 2014, which resolved all claims against the sole remaining defendant, so Mr. Hartenstine can now challenge the court's previous order sustaining Attorney Carney's preliminary objections. Mr. Hartenstine concludes this Court has jurisdiction in this matter, and the appeal should proceed. We agree.

"The appealability of an order directly implicates the jurisdiction of the court asked to review the order." ***In re Estate of Considine v. Wachovia Bank***, 966 A.2d 1148, 1151 (Pa.Super. 2009). As a result, "this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." ***Id.***; ***Stanton v. Lackawanna Energy, Ltd.***, 915 A.2d 668, 673 (Pa.Super. 2007). "An appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313)." ***In re Estate of Cella***, 12 A.3d 374, 377 (Pa.Super. 2010) (some internal citations omitted). Pennsylvania Rule of Appellate Procedure 341 defines "final orders" and states:

**Rule 341. Final Orders; Generally**

**(a) General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

     **(b)**   **Definition of final order.**  A final order is any order that:

     (1)   disposes of all claims and of all parties; or

     (2)   is expressly defined as a final order by statute; or

     (3)   is entered as a final order pursuant to subdivision (c) of this rule.

     **(c)**   **Determination of finality.**  When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim [or when multiple parties are involved,] the trial court…may enter a final order as to one or more but fewer than all of the claims [and parties] only upon an express determination that an immediate appeal would facilitate resolution of the entire case.  Such an order becomes appealable when entered.  In the absence of such a determination and entry of a final order, any order…that adjudicates fewer than all the claims [and parties] shall not constitute a final order.  …

Pa.R.A.P. 341(a)-(c) (effective July 1, 2014).[3]  Thus, "[u]nder Rule 341, a final order can be one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination under Rule 341(c)." ***Estate of Cella, supra*** at 378.

"[O]rders [sustaining] preliminary objections and disposing of only some but not all of the underlying parties…are interlocutory and

---

[3] This version of Rule 341 was in effect when Mr. Hartenstine filed the notice of appeal in this case.  The current version of Rule 341 omits the prior subsection (b)(2), which was rescinded.  The remainder of Rule 341(a)-(c) is substantially the same.  ***See*** Pa.R.A.P. 341(a)-(c) (amended December 14, 2015; effective April 1, 2016).

unappealable." ***Spuglio v. Cugini***, 818 A.2d 1286, 1287 (Pa.Super. 2003). When a subsequent order or judgment disposes of the claims as to the remaining party, however, the prior interlocutory order becomes "final" and appealable for purposes of Rule 341. ***See, e.g., Strausser v. PRAMCO, III***, 944 A.2d 761 (Pa.Super. 2008) (explaining that where multiple defendants in single action are removed from case in piecemeal fashion by separate orders sustaining those defendants' preliminary objections, each order sustaining preliminary objections becomes appealable when suit is resolved against final defendant); ***B.K. ex rel. S.K. v. Chambersburg Hosp.***, 834 A.2d 1178 (Pa.Super. 2003), *appeal denied*, 577 Pa. 705, 847 A.2d 1276 (2004) (stating in action involving multiple defendants, order granting summary judgment as to one party becomes appealable after disposition of claims involving remaining parties); ***Gutteridge v. A.P. Green Services, Inc.***, 804 A.2d 643 (Pa.Super. 2002), *appeal denied*, 574 Pa. 748, 829 A.2d 1158 (2003) (explaining trial court order declaring case settled as to all remaining parties renders final for purposes of Rule 341 prior summary judgments in favor of some defendants).

Instantly, on March 31, 2015, this Court issued a *per curiam* rule to show cause why the appeal should not be quashed as interlocutory where the trial court's December 19, 2014 order sustaining Attorney Carney's preliminary objections did not resolve the claims against all parties. Mr. Hartenstine responded on April 10, 2015, explaining the court's subsequent

entry of default judgment and damages against Ms. Bullock on December 23, 2014 resolved the claims against the last remaining defendant and rendered the prior order final and appealable. On April 21, 2015, this Court discharged the rule to show cause, permitted the appeal to proceed, and advised Mr. Hartenstine that he should be prepared to discuss the jurisdictional issue on appeal. Our review of the record confirms the court's December 23, 2014 entry of default judgment against Ms. Bullock resolved all claims against the sole remaining party, and made "final" and appealable the December 19, 2014 order sustaining Attorney Carney's preliminary objections. *See* Pa.R.A.P. 341(b)(1); *Strausser, supra*; *B.K., supra*; *Gutteridge, supra*. Thus, we have no jurisdictional impediments and will review the merits of Mr. Hartenstine's claims.

In his second issue, Mr. Hartenstine concedes Pennsylvania recognizes common-law marriages contracted on or before January 1, 2005, in which the party seeking to establish common-law marriage must show an instance where an exchange of words in the present tense was spoken with the specific purpose to create a legal relationship of husband and wife. Mr. Hartenstine argues that under Pennsylvania law, the validity of a marriage is determined by the law of the place where it was celebrated; and a marriage invalid in the state where it was purportedly formed is invalid in all other states. Mr. Hartenstine asserts Maryland does not recognize common-law marriage and contends Attorney Carney filed the divorce complaint on the

fundamentally flawed premise that Mr. Hartenstine and Ms. Bullock could have entered into a common-law marriage in a state that does not recognize common-law marriage. Mr. Hartenstine submits Attorney Carney lacked probable cause to file the divorce complaint because the required "words of present intent" allegedly took place in a state that does not recognize common-law marriage. Mr. Hartenstine highlights that the court informed Attorney Carney during a status conference in the divorce action that Maryland does not recognize common-law marriage, but Attorney Carney continued to litigate the divorce action anyway. Mr. Hartenstine insists Attorney Carney knew or should have known with the exercise of due diligence that Maryland does not recognize common-law marriage and any alleged common-law marriage entered into in Maryland would be invalid in Pennsylvania.

Mr. Hartenstine also avers "conduct evidence," including evidence of cohabitation and reputation in the community, is insufficient to prove he and Ms. Bullock entered into a common-law marriage because such evidence is admissible to prove common-law marriage only where one of the parties to the alleged marriage is unavailable to testify about the "words of present intent." Even if "conduct evidence" were admissible in this case, Mr. Hartenstine contends neither the divorce complaint nor the amended divorce complaint contained any allegation that Mr. Hartenstine and Ms. Bullock cohabitated or had a reputation in the community as husband and wife. Mr.

Hartenstine emphasizes the sole basis for the supposed common-law marriage pled in the divorce complaint and amended divorce complaint was the alleged "words of present intent" exchanged in Maryland. Mr. Hartenstine submits he sufficiently pled in his complaint that Attorney Carney acted without probable cause in filing the divorce action on behalf of Ms. Bullock for the wrongful purpose of obtaining a settlement in the underlying eviction action. Alternatively, Mr. Hartenstine argues Attorney Carney was grossly negligent in filing the divorce action where he knew or should have known as a family law practitioner that the alleged common-law marriage formed in Maryland could not be valid in Pennsylvania. Mr. Hartenstine concludes the trial court committed legal error when it sustained Attorney Carney's preliminary objections to count one of the complaint for wrongful use of civil proceedings, and this Court must reverse the order sustaining preliminary objections. We disagree.

The relevant scope and standard of review in examining a challenge to an order sustaining preliminary objections in the nature of a *demurrer* are as follows:

> Our review of a trial court's sustaining of preliminary objections in the nature of a *demurrer* is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.

- 12 -

All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for the purpose of this review. The question presented by the *demurrer* is whether, on the **facts** averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a *demurrer* should be sustained, this doubt should be resolved in favor of overruling it.

Regarding a *demurrer*, this Court has held:

A *demurrer* is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted. A *demurrer* by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. In ruling on a *demurrer*, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint.

Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a *demurrer* is properly sustained.

***Lerner v. Lerner***, 954 A.2d 1229, 1234-35 (Pa.Super. 2008) (emphasis in original) (internal citations omitted).

Pennsylvania's Dragonetti Act provides in pertinent part, as follows:

### § 8351. Wrongful use of civil proceedings

**(a)      Elements of action.—**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

- 13 -

(2) the proceedings have terminated in favor of the person against whom they are brought.

\* \* \*

## § 8352. Existence of probable cause

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

\* \* \*

## § 8354. Burden of proof

In an action brought pursuant to this subchapter the plaintiff has the burden of proving, when the issue is properly raised, that:

(1) The defendant has procured, initiated or continued the civil proceedings against him.

(2) The proceedings were terminated in his favor.

(3) The defendant did not have probable cause for his action.

(4) The primary purpose for which the proceedings were brought was not that of securing the proper

discovery, joinder of parties or adjudication of the claim on which the proceedings were based.

(5) The plaintiff has suffered damages as set forth in section 8353 (relating to damages).

42 Pa.C.S.A. §§ 8351(a); 8352; 8354. To withstand a *demurrer*, a wrongful use of civil proceedings complaint must at least include the factual allegations required to carry the burden of proof set forth at Section 8354. ***Gentzler v. Atlee***, 660 A.2d 1378, 1381 (Pa.Super. 1995), *appeal denied*, 543 Pa. 694, 670 A.2d 142 (1995). At this stage in the proceedings, however, the questions of whether the facts alleged in the complaint can be proved or whether the plaintiff actually suffered any damages are not before us; we must simply decide whether the plaintiff's allegations make out a cause of action under the applicable law. ***Id.*** "The existence of probable cause is a matter of law for the court to decide and is a proper objection for a defendant…to raise on preliminary objections." ***Id.*** at 1382.

"A party has probable cause to bring an action when he 'reasonably believes' in the facts on which it is based **and** in the viability of the legal theory under which it is brought." ***Id.*** (emphasis in original). In other words:

If [the defendant] had a reasonable belief in the facts on which the claim was based and in the validity of the claim under existing or developing law, then [the plaintiff's] cause of action for wrongful use cannot succeed. On the other hand, if [the defendant] lacked reasonable belief in the facts alleged or the validity of the claim under existing or developing law, and made the claim for an improper purpose, then [the plaintiff's] cause of action for wrongful

use may proceed.

*Id.* Additionally:

> Insofar as attorney liability is concerned, as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case. Lawyers can safely act upon the facts stated by their clients.
>
> That being said, the plaintiff in a wrongful use of civil proceedings action need not obtain the defendant's outright 'confession' of improper purpose; an improper purpose may be inferred where the action is filed without justification. Thus, a claim for wrongful use of civil proceedings will lie if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause.

*Perelman v. Perelman*, 125 A.3d 1259, 1264 (Pa.Super. 2015) (internal citations and quotation marks omitted). "[A]n attorney is entitled to rely in good faith upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon." *Kit v. Mitchell*, 771 A.2d 814, 822 (Pa.Super. 2001), *appeal dismissed as improvidently granted*, 577 Pa. 69, 842 A.2d 368 (2004). "Lawyers can safely act upon facts stated by their clients. They do not incur liability to third persons for filing civil proceedings when the evidence of those facts is later found not credible by the court or jury whose duty it is to try the case." *Meiksin v. Howard Hanna Co., Inc.*, 590 A.2d 1303, 1307 (Pa.Super. 1991), *appeal denied*, 528 Pa. 644, 600 A.2d 196 (1991). *See also Kit, supra* (affirming grant of judgment notwithstanding verdict in favor of attorney on plaintiff's wrongful use of civil

proceedings claim; attorney had probable cause to seek enforcement of child support order on behalf of his client, despite attorney's knowledge that plaintiff was not child's biological father, under then-existing legal theories of *res judicata* and paternity by estoppel). **Compare Korn v. Epstein**, 727 A.2d 1130 (Pa.Super. 1999), *appeal denied*, 560 Pa. 707, 743 A.2d 921 (1999) (affirming verdict against attorney for wrongful use of civil proceedings, where attorney had pursued individual lawyers of law firm for debt collection on behalf of court-reporter client; attorney lacked probable cause to sue individual lawyers in absence of written and signed agreement by lawyers to assume personal liability for law firm's debt; attorney had made several comments to individual lawyers about settling debt after attorney filed suit; trial court could reasonably infer attorney's pursuit of action amounted to improper effort to extract settlement from individual lawyers to pay debt); **Gentzler, supra** (reversing order sustaining attorney's preliminary objections to plaintiff's wrongful use of civil proceedings complaint, where attorney had filed lack of informed consent and negligence complaint against plaintiff on behalf of attorney's client without probable cause or in grossly negligent manner; attorney's lack of informed consent claim had no legal support where plaintiff was treating physician of attorney's client and did not actually perform surgical procedure at issue which required obtaining client's informed consent; attorney's negligence claim also lacked legal support where attorney knew prior to

filing suit plaintiff was not responsible for ordering administration of blood products to client).

"The presence of probable cause, however, does not necessarily defeat the entire cause of action for wrongful use of civil proceedings, as the clear language of [42 Pa.C.S.A. §] 8351 permits a cause of action to be based on gross negligence **or** lack of probable cause." ***Keystone Freight Corp. v. Stricker***, 31 A.3d 967, 973 (Pa.Super. 2011) (emphasis in original). "Gross negligence is defined, *inter alia*, as a lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party…" ***Hart v. O'Malley***, 781 A.2d 1211, 1218 (Pa.Super. 2001). "Gross negligence has also been described as the want of even scant care and the failure to exercise even that care which a careless person would use." ***Id.*** (internal citation and quotation marks omitted). ***See also Keystone Freight, supra*** (affirming summary judgment in favor of executrix and her attorneys in wrongful use of civil proceedings suit; executrix and her attorneys had probable cause and did not exercise gross negligence in bringing wrongful death/survival action against trucking company, where they presented carefully reasoned arguments supported by expert testimony for their claim of trucking company's negligence; trucking company also failed to produce any evidence that executrix and attorneys commenced action for improper purpose).

Section 1103 of the Domestic Relations Code discusses the viability of

common-law marriage in Pennsylvania and provides:

### § 1103. Common-law marriage

No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid.

23 Pa.C.S.A. § 1103. Prior to its abolition, "[a] common-law marriage [could] only [have been] created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by such exchange." **Bell v. Ferraro**, 849 A.2d 1233, 1235 (Pa.Super. 2004). "The burden to prove a common-law marriage rests on the proponent of the marriage and such a claim must be reviewed with great scrutiny." **Id.  See also In re Estate of Rees**, 480 A.2d 327 (Pa.Super. 1984) (explaining that words *in praesenti* are usually required to establish common-law marriage relationship). "The common-law marriage contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time." **Staudenmayer v. Staudenmayer**, 552 Pa. 253, 262, 714 A.2d 1016, 1020 (1998).

Generally, words in the present tense are required to prove common-law marriage. Because common-law marriage cases arose most frequently because of claims for a putative surviving spouse's share of an estate, however, we developed a rebuttable presumption in favor of a common-law marriage where there is an absence of testimony regarding the exchange of *verba in praesenti*. When applicable, the party claiming a common-law

> marriage who proves: (1) constant cohabitation; and, (2) a reputation of marriage which is not partial or divided but is broad and general, raises the rebuttable presumption of marriage. Constant cohabitation, however, even when conjoined with general reputation are not marriage, they are merely circumstances which give rise to a rebuttable presumption of marriage.

*Id.* at 262-63, 714 A.2d at 1020-21 (internal citations, quotation marks, and footnotes omitted).

The rule permitting a court to find common-law marriage based on reputation and cohabitation alone is one of necessity, applied only in cases where other proof is unavailable. ***Estate of Rees, supra***. "The 'necessity' that would require the introduction of evidence concerning cohabitation and reputation of marriage is the inability to present direct testimony regarding the exchange of *verba in praesenti*." ***Staudenmayer, supra*** at 263, 714 A.2d at 1021. ***See also*** 20 Pa.C.S.A. § 2209 (stating: "A person who is or claims to be the surviving spouse shall be a competent witness as to all matters pertinent to his rights under this chapter other than the creation of his status as the surviving spouse"); ***Estate of Stauffer***, 504 Pa. 626, 476 A.2d 354 (1984) (holding Dead Man's Act prohibited purported wife's testimony regarding exchange of "words of present intent" with her alleged common-law husband). In other words, the rebuttable presumption in favor of common-law marriage based on sufficient proof of cohabitation and reputation of marriage is permitted as a remedial measure, where the parties are otherwise unable to testify regarding the necessary "words of

present intent." ***Staudenmayer, supra*** at 264, 714 A.2d at 1021.

> However, where the parties are available to testify regarding *verba in praesenti*, the burden rests with the party claiming a common-law marriage to produce clear and convincing evidence of the exchange of words in the present tense spoken with the purpose of establishing the relationship of husband and wife, in other words, the marriage contract. In those situations, the rebuttable presumption in favor of a common-law marriage upon sufficient proof of constant cohabitation and reputation for marriage, does not arise.
>
> By requiring proof of *verba in praesenti* where both parties are able to testify, we do not discount the relevance of evidence of constant cohabitation and reputation of marriage. When faced with contradictory testimony regarding *verba in praesenti*, the party claiming a common-law marriage may introduce evidence of constant cohabitation and reputation of marriage in support of his or her claim. We merely hold that if a putative spouse who is able to testify and fails to prove, by clear and convincing evidence, the establishment of the marriage contract through the exchange of *verba in praesenti*, then that party has not met its "heavy" burden to prove a common-law marriage, since he or she does not enjoy any presumption based on evidence of constant cohabitation and reputation of marriage.

***Id.*** (internal footnote omitted) (holding appellant was not entitled to rebuttable presumption in favor of common-law marriage through evidence of constant cohabitation and reputation of marriage where she was available to testify, and did testify (albeit unconvincingly), concerning exchange of "words of present intent" between parties; thus, appellant failed to meet burden to prove common-law marriage).

In general, the law of the state in which a marriage is celebrated governs the validity of the marriage. ***Jewett v. Jewett***, 175 A.2d 141, 142

(Pa.Super. 1961). Ordinarily, a marriage valid in the state where it is contracted is valid everywhere. ***Sullivan v. American Bridge Co.***, 176 A. 24, 25 (Pa.Super. 1935). The corollary of the general rule (if a marriage is invalid in the state where it is contracted then it is invalid everywhere), however, has been subject to some exceptions. ***See id.*** (affirming grant of workers' compensation benefits to claimant where claimant proved she entered into common-law marriage with decedent; notwithstanding claimant's and decedent's exchange of "words of present intent" in Maryland, which does not recognize common-law marriage, immediately following exchange of words, claimant and decedent constantly cohabitated together in New Jersey and Pennsylvania, during time when those states recognized common-law marriage, and held themselves out to community as husband and wife; evidence presented made clear that decedent recognized and regarded claimant as his wife).[4] ***Compare Cooney v. W.C.A.B.***, 94

---

[4] In ***Sullivan***, this Court relied on the United States Supreme Court decision in ***Travers v. Reinhardt***, 205 U.S. 423, 27 S.Ct. 563, 51 L.Ed. 865 (1907) (holding decedent and putative spouse entered into common-law marriage in New Jersey; following decedent and putative spouse's invalid marriage ceremony in Virginia for lack of proper license, they continuously cohabitated as husband and wife and uniformly held themselves out as sustaining that relation; evidence made clear that decedent recognized putative spouse as his wife and held her out as such; decedent and putative spouse's conduct towards each other while they lived in New Jersey was equivalent, in law, to declaration by each that they did, and during their joint lives were to, occupy relation of husband and wife; such declaration was as effective to establish status of marriage in New Jersey, as if it had been made by "words of present intent" after they became domiciled in that state).

A.3d 425 (Pa.Cmwlth. 2014), *appeal denied*, ___ Pa. ___, 109 A.3d 680 (2015) (affirming denial of workers' compensation benefits to claimant where she failed to prove she entered into common-law marriage with decedent; decedent and claimant exchanged "words of present intent" in 2003 in Wyoming, which does not recognize common-law marriage; when claimant and decedent moved to Pennsylvania in 2009 (cohabitating and holding themselves out as "husband and wife"), common-law marriage was already abolished; thus, decedent and claimant failed to perform acts which would satisfy proof of common-law marriage while in state that recognized common-law marriage at that time).

Instantly, Mr. Hartenstine's underlying eviction action against Ms. Bullock was scheduled to be heard on October 3, 2011. On that date, Attorney Carney appeared in court as counsel for Ms. Bullock and served Mr. Hartenstine with a divorce complaint. The divorce complaint alleged Ms. Bullock and Mr. Hartenstine were married at common law, and sought, *inter alia*, equitable distribution, alimony, and alimony *pendente lite*. Based on the filing of the divorce complaint, the court determined the matter should proceed in family court and dismissed Mr. Hartenstine's eviction complaint without prejudice.

On January 24, 2012, Mr. Hartenstine filed preliminary objections to the divorce complaint, claiming the complaint failed to provide the time and place of the alleged common-law marriage. The court granted Ms. Bullock

leave to amend, and on February 21, 2012, Attorney Carney filed an amended divorce complaint on Ms. Bullock's behalf. The amended divorce complaint alleged: "The parties are married at common law on August 4, 1995[,] in Baltimore, Maryland." (***See*** Amended Divorce Complaint at 1 ¶ 4, attached as Exhibit B to Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock; R.R. at 21a.)

On April 25, 2012, Ms. Bullock gave deposition testimony that on August 4, 1995, she and Mr. Hartenstine exchanged "words of present intent" at the Omni Hotel as follows: "We were sitting on the bed. We were holding hands and [Mr. Hartenstine] said, we are married, you are my wife. And I said, I will always love you. You are my husband." (***See*** Deposition testimony of Ms. Bullock at 6, attached as Exhibit C to Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock; R.R. at 31a.) Ms. Bullock further testified that she and Mr. Hartenstine "lived together as husband and wife" since 1991, and that Ms. Bullock's daughter "assumed" Ms. Bullock and Mr. Hartenstine were married.[5] (***Id.*** at 9; R.R. at 34a.)

Following a two-day hearing on June 10-11, 2013,[6] the family court issued findings of fact and conclusions of law on July 8, 2013. Specifically,

---

[5] Exhibit C to Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock is only a brief excerpt of Ms. Bullock's deposition testimony.

[6] The certified record does not contain the notes of testimony from these hearings.

the family court found:

## FINDINGS OF FACT

1.      The parties traveled to Baltimore, Maryland for [Mr. Hartenstine's] birthday with [Ms. Bullock's] daughter on or about August 4, 1995.

2.      [Ms. Bullock] contends that while they were in a hotel room, [Mr. Hartenstine] stated to her "we are married, you are my wife" to which [Ms. Bullock] replied "I will always love you, you are my husband."

3.      Several of [Mr. Hartenstine's] close friends testified at the time of [the] hearing that [Ms. Bullock] and [Mr. Hartenstine] never referred to each other as husband and wife in the presence of close friends or public events.

4.      Conversely, [Ms. Bullock and Ms. Bullock's] daughter testified that the parties introduced each other as husband and wife at events.

5.      [Ms. Bullock's] daughter testified that she believed [Ms. Bullock] and [Mr. Hartenstine] were married since [Mr. Hartenstine] gave [Ms. Bullock] greeting cards using the word "wife" and their behavior in living together and sharing household and familial responsibilities.  In fact, [Ms. Bullock's] daughter believed [Mr. Hartenstine] was her biological father.

6.      [Ms. Bullock] never told anyone she was married.

7.      [Mr. Hartenstine] gave [Ms. Bullock] a wedding band sometime after 1995 which [Ms. Bullock] wore until 2008.

8.      One of [Mr. Hartenstine's] friends testified that he never saw [Ms. Bullock] wear her wedding band. (However, this [c]ourt must countenance this with the fact that this friend saw [Ms. Bullock] on camping trips where jewelry [is] not customarily worn for safety purposes).

9.      The parties lived together from 1995-2008.

> 10. During the parties' relationship, [Ms. Bullock] mostly stayed on the parties' farm and not with [Mr. Hartenstine].
>
> 11. The parties' former housekeeper testified that she never saw any of [Ms. Bullock's] clothes in the parties' residence.
>
> 12. The parties filed as single on their tax returns from the years 1996 to 1997.
>
> 13. The parties filed joint tax returns from the years 1998 to 2008.

(*See* Family Court's Findings of Facts and Conclusions of Law at 2, attached as Exhibit D to Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock; R.R. at 36a.) Ultimately, the family court concluded Ms. Bullock failed to prove by clear and convincing evidence the existence of a valid common-law marriage.

Significantly, at the time Attorney Carney initiated the divorce action on behalf of Ms. Bullock, he relied on information from his client, *inter alia*: (1) Ms. Bullock and Mr. Hartenstine exchanged "words of present intent" on August 4, 1995, in Baltimore, Maryland; (2) Ms. Bullock and Mr. Hartenstine lived together in Pennsylvania as husband and wife since 1991, and continued to live together in Pennsylvania after the exchange of words in 1995; (3) Ms. Bullock's daughter believed Mr. Hartenstine and Ms. Bullock were married and thought Mr. Hartenstine was her biological father; (4) Mr. Hartenstine gave Ms. Bullock a wedding ring sometime after 1995; and (5) Mr. Hartenstine and Ms. Bullock held themselves out as husband and wife at

events. Attorney Carney was entitled to rely in good faith on the facts disclosed by his client when he filed the divorce action, and to proceed with the divorce action so long as he believed the common-law marriage theory had even a slight chance of success. *See Perelman, supra*; *Kit, supra*; *Meiksin, supra*.

Notwithstanding Mr. Hartenstine's and Ms. Bullock's alleged exchange of "words of present intent" in a state that does not recognize common-law marriage, under our Court's analysis in *Sullivan*, Attorney Carney reasonably believed a marriage contracted in a state that does not recognize common-law marriage **might** be valid in Pennsylvania under the circumstances described by his client. *See* 42 Pa.C.S.A. § 8352(1); *Sullivan, supra*. In addition to relying on *Sullivan*, in his post-hearing letter brief submitted in the divorce action, Attorney Carney cited numerous cases from other jurisdictions to support his position.[7] (*See* Post-Hearing Letter Brief at 1-3, attached as Exhibit C to Attorney Carney's Preliminary Objections, filed 7/22/14; R.R. at 93a-95a.) According to the family court's findings of fact, Ms. Bullock presented evidence that she and Mr. Hartenstine lived together as husband and wife in Pennsylvania prior to the abolition of common-law marriage in 2005, and enjoyed a reputation in the community

_____

[7] Attorney Carney also cites and relies on *Cooney* in his appellate brief. The Commonwealth Court had not yet decided *Cooney* at the time Attorney Carney filed the divorce action on behalf of Ms. Bullock.

of husband and wife during that time.[8] These facts **might** have been sufficient to establish common-law marriage under the law if believed by the fact-finder. *See* 23 Pa.C.S.A. § 1103; *Sullivan, supra*.

Likewise, the record does not indicate a complete lack of diligence by Attorney Carney or the failure to exercise the care even a careless person would use in initiating the divorce action. *See Hart, supra*. To the contrary, the record shows Attorney Carney presented during the divorce proceedings careful arguments based on a reasonable interpretation of the law. *See Keystone Freight, supra*. Thus, Mr. Hartenstine cannot show Attorney Carney acted without probable cause or was grossly negligent in

---

[8] Ordinarily, testimony/evidence concerning Ms. Bullock's and Mr. Hartenstine's cohabitation and reputation in the community would have been inadmissible where both parties to the divorce action were able to testify about the "words of present intent." *See Staudenmayer, supra*; *Estate of Rees, supra*. If Mr. Hartenstine disputed Ms. Bullock's testimony about the "words of present intent," however, the court could have considered cohabitation/reputation testimony. *See Staudenmayer, supra*. Because the certified record does not contain the notes of testimony from the divorce action hearings, we are unable to verify whether Mr. Hartenstine disputed Ms. Bullock's allegations about the "words of present intent" or even objected to her testimony/evidence concerning cohabitation/reputation. It is an appellant's responsibility to ensure the certified record contains all relevant notes of testimony. *See Kessler v. Broder*, 851 A.2d 944 (Pa.Super. 2004), *appeal denied*, 582 Pa. 676, 868 A.2d 1201 (2005) (explaining it remains appellant's responsibility to ensure that complete record is produced for appeal; appellant's failure to ensure certified record contains sufficient information to conduct proper review may constitute waiver of issues). To the extent Mr. Hartenstine complains on appeal the family court should not have considered evidence of cohabitation/reputation, that claim is not properly before this Court and we decline to comment on the family court's admission of evidence in the absence of a complete record from those proceedings. *See id.*

bringing or continuing the divorce claim on behalf of Ms. Bullock. *See id.* *See also Kit, supra*. *Compare Korn, supra*; *Gentzler, supra*. Therefore, Mr. Hartenstine's second issue on appeal merits no relief.

In his third issue, Mr. Hartenstine argues Attorney Carney initiated the divorce proceedings in response to the eviction proceedings, to coerce Mr. Hartenstine into settling or dropping the eviction action. Mr. Hartenstine asserts Attorney Carney's decision to serve Mr. Hartenstine with the divorce complaint at the hearing scheduled in the eviction proceedings was a calculated move designed to coerce settlement. Mr. Hartenstine emphasizes that his personal relationship with Ms. Bullock ended more than ten years before Attorney Carney initiated the divorce action.[9] Mr. Hartenstine claims Ms. Bullock's attempt to reach an agreement with Mr. Hartenstine after he began the initial eviction action demonstrates the divorce action is meritless, where Ms. Bullock did not contend she was Mr. Hartenstine's common-law wife during those attempted negotiations. Mr. Hartenstine insists Attorney Carney's attempt to extract a settlement in the eviction action by filing the divorce complaint constituted a perversion of legal process. Mr. Hartenstine maintains he suffered significant financial harm in defending the divorce action, as well as physical and emotional stress. Mr. Hartenstine submits he sufficiently pled in his complaint that Attorney Carney used legal process

---

[9] This averment contradicts Ms. Bullock's contention that the relationship ended in 2008.

primarily to accomplish a purpose for which it was not intended, and that Mr. Hartenstine suffered harm as a result. Mr. Hartenstine concludes the trial court erred when it sustained Attorney Carney's preliminary objections to count two of the complaint for abuse of process, and this Court must reverse the order sustaining preliminary objections. We agree.

Pennsylvania law defines a cause of action for abuse of process as follows:

> The tort of "abuse of process" is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. This tort differs from that of wrongful use of civil proceedings in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial. The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure. In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

**Shiner v. Moriarty**, 706 A.2d 1228, 1236 (Pa.Super. 1998), *appeal denied*, 556 Pa. 711, 729 A.2d 1130 (1998) (internal citations and quotation marks omitted).

> The gravamen of the misconduct for which the liability stated…is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil

proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed….

*Rosen v. American Bank of Rolla,* 627 A.2d 190, 192 (Pa.Super. 1993) (internal citations omitted). "Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa.Super. 2002), *appeal denied*, 569 Pa. 722, 806 A.2d 862 (2002).

The classic example [of abuse of process] is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon. It is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive. Rather, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action.

*Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 192 (Pa.Super. 1994) (internal citations and quotation marks omitted).

Instantly, Mr. Hartenstine alleged in his complaint at count two:

44.     [Mr. Hartenstine] incorporates the foregoing paragraphs as if set forth at length herein.

45.     As set forth more fully above, [Ms.] Bullock, through [Attorney] Carney, filed a Divorce Complaint alleging that a common-law marriage was formed in a

state that does not recognize common-law marriage.

[46.] [Ms. Bullock and Attorney Carney] wrongfully used the Divorce Action as a tactical weapon against [Mr.] Hartenstine in response to the Eviction Action in an attempt to coerce [Mr.] Hartenstine into dropping the Eviction Action or making a monetary settlement.

[47.] [Ms. Bullock and Attorney Carney] acted maliciously and outrageously, and their conduct warrants the imposition of punitive damages.

[48.] [Mr.] Hartenstine suffered significant emotional distress over the nearly two year period which the Divorce Action spanned and is entitled to emotional damages.

[49.] [Mr.] Hartenstine suffered substantial damages as follows:

  a. The payment of $56,464 in attorney's fees;

  b. Lost property rental from January 1, 2010 to September 17, 2013 of $18,400;

  c. Lost refinancing opportunity of $5,000;

  d. Forced liquidation of stock costing him $17,000 due to an untimely sale and tax payment;

  e. Mental pain and anguish that [led] to severe dental problems costing $12,000;

  f. Emotional pain that interfered with his personal relationships.

(*See* Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock at 10-11 ¶¶ 44-49; R.R. at 12a-13a.)[10] The Complaint makes clear Mr. Hartenstine alleged that Attorney Carney, acting on behalf of Ms. Bullock:

---

[10] Some of the paragraph formatting in the complaint is out of order.

(1) used legal process against Mr. Hartenstine by filing a divorce complaint against him on behalf of Ms. Bullock; (2) primarily to coerce Mr. Hartenstine to drop or settle the underlying eviction action against Ms. Bullock; and (3) specific harm, including but not limited to, emotional distress, lost property rental revenue, and attorney's fees. *See id.*; *Shiner, supra*.

At this early stage in the proceedings, we must accept all facts in the complaint as true. *See Lerner, supra*. The facts as alleged in Mr. Hartenstine's complaint, if true, could entitle him to relief on his abuse of process claim against Attorney Carney, where Mr. Hartenstine specifically pled that Attorney Carney proceeded in the divorce action with the illegitimate aim to coerce or compel Mr. Hartenstine to drop or settle the underlying eviction action. *See Werner, supra*; *Al Hamilton Contracting, supra*. Our determination that Attorney Carney had probable cause to initiate the divorce action is immaterial to whether Attorney Carney committed abuse of process by continuing with the divorce action for an illegitimate purpose. *See Rosen, supra*. Based on Mr. Hartenstine's allegations in the complaint, we cannot say the denial of relief on his abuse of process claim is so clear and free of doubt to sustain Attorney Carney's preliminary objections. *See Lerner, supra*. Accordingly, we reverse that part of the trial court's order sustaining Attorney Carney's preliminary objections with respect to Mr. Hartenstine's abuse of process claim and remand for further proceedings on that claim.

In his fourth issue, Mr. Hartenstine argues Attorney Carney specializes in the practice of family law, and he should have known a marriage contract between Mr. Hartenstine and Ms. Bullock could not exist under the law governing common-law marriage. Mr. Hartenstine reiterates that Attorney Carney instituted, maintained, and prosecuted the divorce action for the sole, illegitimate purpose of forcing Mr. Hartenstine to settle or drop the eviction action. Mr. Hartenstine contends Attorney Carney's actions constitute outrageous and malicious conduct warranting punitive damages. Mr. Hartenstine concedes that a request for punitive damages is a derivative claim based on the success or failure of his wrongful use of civil proceedings and abuse of process claims. Mr. Hartenstine concludes this Court must reverse the trial court's order sustaining Attorney Carney's preliminary objections and reinstate Mr. Hartenstine's claim for punitive damages at both counts of the complaint. We disagree.

The Dragonetti Act provides for specific damages:

### § 8353. Damages

When the essential elements of an action brought pursuant to this subchapter have been established as provided in section 8351 (relating to wrongful use of civil proceedings), the plaintiff is entitled to recover for the following:

(1) The harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings.

(2) The harm to his reputation by any defamatory

matter alleged as the basis of the proceedings.

> (3) The expense, including any reasonable attorney fees, that he has reasonably incurred in defending himself against the proceedings.

> (4) Any specific pecuniary loss that has resulted from the proceedings.

> (5) Any emotional distress that is caused by the proceedings.

> (6) Punitive damages according to law in appropriate cases.

42 Pa.C.S.A. § 8353.

"Punitive damages are, by definition, penal in nature, and not for the purpose of providing additional compensation." *Hart, supra* at 1217. Rather, "punitive damages are an 'extreme remedy' available only in the most exceptional circumstances." *Doe v. Wyoming Valley Health Care System, Inc.*, 987 A.2d 758, 768 (Pa.Super. 2009).

> Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others. A defendant acts recklessly when his conduct creates an unreasonable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent. Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. Rather, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to intentional, willful, wanton or reckless conduct….

*Id.* In determining whether punitive damages are warranted, "we must

analyze whether the complaint's allegations establish that the actor actually knew or had reason to know of facts which created a high risk of physical harm to plaintiff. Further, the defendant must have proceeded to act in conscious disregard of or indifference to that risk." ***Field v. Philadelphia Elec. Co.***, 565 A.2d 1170, 1182 (Pa.Super. 1989) (explaining imposition of punitive damages is appropriate only where defendant's conduct is egregious; reversing order sustaining preliminary objections to claim for punitive damages where complaint alleged, *inter alia*, defendant deliberately operated nuclear plant in such manner that plaintiff was exposed to dangerous levels of radiation, defendant lied to plaintiff about his potential exposure to radiation, defendant deliberately exposed plaintiff to dangerous levels of radiation again several months later, and defendant caused plaintiff to be fired after he reported defendant's actions to nuclear regulatory commission).

Instantly, Mr. Hartenstine's request for punitive damages derived from his wrongful use of civil proceedings and abuse of process claims. The trial court found both claims were legally insufficient, so the court sustained Attorney Carney's preliminary objections to the claim for punitive damages based on that finding. Due to our disposition regarding Mr. Hartenstine's wrongful use of civil proceedings claim, we affirm the trial court's order sustaining Attorney Carney's preliminary objections to the claim for punitive damages at count one of the complaint.

Regarding Mr. Hartenstine's abuse of process claim at count two, Mr. Hartenstine does not allege facts in his complaint which rise to the level of conduct warranting imposition of punitive damages. (*See* Mr. Hartenstine's Complaint against Attorney Carney and Ms. Bullock at 10-11 ¶¶ 44-49; R.R. at 12a-13a.) While Mr. Hartenstine describes Attorney Carney's conduct as "outrageous" and "malicious," he does not plead facts demonstrating Attorney Carney's actions amounted to willful, wanton or reckless conduct. *See Doe, supra*. *Compare Field, supra*. Therefore, the extreme remedy of punitive damages is improper under the facts alleged at count two of the complaint. *See Doe, supra*; *Hart, supra*; *Field, supra*. Accordingly, we affirm the court's order sustaining Attorney Carney's preliminary objections to the count for wrongful use of civil proceedings and for punitive damages at both counts of the complaint; we reverse the trial court's order sustaining Attorney Carney's preliminary objections to the abuse of process count and remand for further proceedings on that count of the complaint against Attorney Carney.

Judgment affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/3/2016</u>